**S.A. MINERACAO DA TRINDADE–SAMITRI, Plaintiff-Appellant,**

v.

**UTAH INTERNATIONAL, INC., Utah-Marcona Corporation, Mineracao Marex Ltda., Marcona International S.A., Marcona Inc., and Samarco Mineracao S.A., Defendants-Appellees.**

Nos. 1370, 1504, Dockets 84–7163, 84–7355.

United States Court of Appeals, Second Circuit.

Argued June 29, 1984.

Decided Oct. 1, 1984.

Wayne A. Cross, New York City (Reboul, MacMurray, Hewitt, Maynard & Kristol, New York City, on the brief), for plaintiff-appellant.

Allan N. Littman, San Francisco, Cal. (Gerald Aksen, Christopher Connolly, New York City, Michael H. Salinsky, Charles R. Ragan, Kevin M. Fong, San Francisco, Cal., Reid & Priest, New York City, Pillsbury, Madison & Sutro, San Francisco, Cal., on the brief), for defendants-appellees.

Before KEARSE, PIERCE, and SWYGERT,[*] Circuit Judges.

SWYGERT, Senior Circuit Judge.

Plaintiff S.A. Mineracao da Trinidade-Samitri ("Samitri"), a Brazilian corporation, brought this action in the United States District Court for the Southern District of New York to obtain a declaratory judgment, damages, and other relief against six defendants, corporations in Brazil, Panama, and the United States ("defendants").[1]

---

[*] Senior Circuit Judge of the United States Court of Appeals for the Seventh Circuit, sitting by designation.

1. The defendants include: (1) Utah International, Inc., a Delaware corporation with its principal place of business in San Francisco, California; (2) Utah Marcona, a New York corporation with its principal place of business in San Francisco; (3) Mineracao Marex, Ltd., a limited liability Brazilian company; (4) Marcona International S.A., a Panamanian corporation with its principal place of business in San Francisco; (5) Marcona, Inc., a Delaware corporation with its principal place of business in San Francisco; (6) Samarco Mineracao S.A., a Brazilian corporation with its principal place of business in Belo Horizonte, Brazil. Samarco is not a party to this appeal. The five remaining defendants

Samitri alleges that defendants fraudulently induced Samitri to enter into an international iron ore mining venture. In addition, Samitri alleges seventeen assorted claims under the laws of Brazil and the United States. Defendants moved pursuant to the United States Arbitration Act, 9 U.S.C. §§ 1–14, 201–08 (1982), to stay the prosecution of Samitri's complaint in the district court and to compel arbitration. Samitri cross-moved to enjoin arbitration. The district court ordered arbitration of all of Samitri's claims except two brought under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961–68 (1982) ("RICO"), which the court stayed pending arbitration. *S.A. Mineracao da Trinidade-Samitri v. Utah International, Inc.,* 576 F.Supp. 566 (S.D.N.Y.1983) and 579 F.Supp. 1049 (S.D.N.Y.1984). We affirm.

**I**

Samitri and defendants commenced discussions in the early 1970's concerning the possibility of engaging in a joint venture to mine iron ore from certain undeveloped reserves owned by Samitri in Brazil. In 1973 the parties agreed to undertake the venture which became known as the Samarco Project ("Project"). They formed a jointly-owned corporation to operate the mining project, Samarco Mineracao S.A. ("Samarco"). Under the Shareholders' Agreement, Samitri owns 51% and defendants own 49% of Samarco.

On December 10, 1974 Samitri and defendants entered into three major contracts setting forth the structure and financing of the Project. These contracts ("1974 Agreements") include: (1) the "Samarco Project Agreement" which sets forth the basic business plan; (2) the "Samarco Shareholders' Agreement" which establishes the rules for Samarco's governance and the relations among shareholders; and (3) the "Contract of Commercial Representation" which specifies the sales and marketing

are referred to collectively in order to avoid confusion and because none of the issues presented at this stage of the proceedings re-

duties of the parties. *See* Affidavit of Kenneth E. Merklin, Exhibits A, B & C. Each of the 1974 Agreements contains an arbitration clause which provides in pertinent part:

Whenever any question or dispute shall arise or occur under this [Agreement/Contract], such question or dispute shall (if it is not amicably settled by the Parties) be finally settled by arbitration in Paris, France, by one or more arbitrators appointed in accordance with the Rules of Conciliation and Arbitration of the International Chamber of Commerce

. . . .

*See id.,* Exhibit A, ¶ 10, at 9; Exhibit B, ¶ 11, at 14; Exhibit C, ¶ 8, at 5.

As the Project required additional financing, the parties continually made supplemental investments. The parties executed a number of so-called stock purchase agreements under which the parties purchased additional shares of Samarco stock. On October 21, 1977 the parties entered into a Preferred Stock Purchase Agreement which authorized defendants to purchase shares of Samarco preferred stock from Samitri. This Agreement thus deviated from the 51–49% ratio of ownership established in the Shareholders' Agreement. In 1977 the parties also agreed to guaranty Samarco's debts and liabilities. In 1979 Samarco refinanced its debt and Samitri and defendants entered into a new Guaranty. Finally, in July 1982, the parties agreed to purchase additional shares of Samarco stock and to contribute additional capital to Samarco. Except for the transfer and sale of certain shares of Samarco preferred stock pursuant to the 1977 Purchase Agreement, all transactions of the parties were done in accordance with the 51–49% ownership ratio established in the 1974 Shareholders' Agreement. And except for the 1977 Purchase Agreement, none of the post-1974 agreements contained an arbitration clause.

quires the court to consider any of the defendants individually.

After learning in December 1982 of the cancellation of certain of Samarco's major contracts to supply iron ore to United States purchasers, Samitri sought to rescind its contracts with defendants and to withdraw its interest in Samarco. In March 1983 Samitri brought this action in the district court. Samitri alleges that defendants misrepresented that they had obtained long-term agreements with three United States purchasers. Samitri claims that the misrepresentations induced Samitri to enter into its agreements to invest and reinvest in the Project. Samitri also alleges a number of claims for breach of contract, breach of fiduciary duty, and violation of federal securities laws.

In May 1983 defendants filed a motion to compel arbitration of all of Samitri's claims on the ground that arbitration was required under the terms of the 1974 Agreements. In December 1983 the district court ordered arbitration to proceed on all but Samitri's two RICO claims which the court stayed. On appeal Samitri claims that (1) the arbitration clauses provided in the 1974 Agreements are not broad enough to encompass Samitri's claims of fraudulent inducement; (2) the arbitration clauses provided in the 1974 Agreements do not encompass Samitri's claims based on post-1974 Agreements; and (3) Samitri's RICO claims should not have been stayed pending arbitration.

## II

Samitri claims that the arbitration provisions contained in the 1974 Agreements are relatively narrow and do not encompass claims of fraudulent inducement. Samitri relies upon *In re Kinoshita*, 287 F.2d 951 (2d Cir.1961). In *Kinoshita* this court found that a clause requiring arbitration of "any dispute or difference ... aris[ing] under" the agreement was not sufficiently broad to encompass a claim of fraudulent inducement. *Id.* at 952–53. *See also Michele Amoruso E Figli v. Fisheries Development Corp.*, 499 F.Supp. 1074, 1080 (S.D.N.Y.1980) (involving claims of contract illegality); *accord Mediterranean Enter-*

*prises, Inc. v. Ssangyoeng Corp.*, 708 F.2d 1458, 1464 (9th Cir.1983) (adopting the Second Circuit's analysis in *In re Kinoshita*).

Defendants argue that the instant case is controlled by *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974). *Scherk* involved a clause requiring arbitration of "any controversy or claim ... aris[ing] out of this agreement or the breach thereof." *Id.* at 508, 94 S.Ct. at 2452. The plaintiff in *Scherk* brought an action in federal court alleging that the defendant's fraudulent misrepresentations concerning trademark rights purchased from defendant violated the federal securities laws. The Supreme Court held that the plaintiff's claims were subject to arbitration. *Id.* at 519–20, 94 S.Ct. at 2457–58. Defendants argue that even though the scope of the arbitration clause was not raised by the parties in *Scherk*, the language and reasoning of the Supreme Court require us to sustain the district court's decision in the instant case. *Scherk* requires the federal courts to be particularly solicitous of arbitration provisions contained in international agreements. *See also Parsons & Whittemore Overseas Co. v. Societe Generale de L'Industrie du Papier*, 508 F.2d 969, 974 (2d Cir.1974). "A contractual provision specifying in advance the forum in which disputes shall be litigated and the law to be applied is ... an almost indispensable precondition to achievement of the orderliness and predictability essential to any international business transaction." *Scherk v. Alberto-Culver Co., supra*, 417 U.S. at 516, 94 S.Ct. at 2455. The Court pointed out that arbitration obviates certain dangers peculiar to the choice of forum for resolution of international business disputes. Those dangers include hostility by a forum to the interests of one of the parties and a forum's lack of familiarity with the law to be applied to and the subject matter of the agreement. *Id.*

The scope of an arbitration clause, like any contract provision, is a question of the intent of the parties. *See Necchi S.P.A. v. Necchi Sewing Machine Sales*

*Corp.,* 348 F.2d 693, 696 (2d Cir.1965), *cert. denied,* 383 U.S. 909, 86 S.Ct. 892, 15 L.Ed.2d 664 (1966). That principle, however, frequently fails to offer much guidance. A dispute over the scope of a contract provision generally arises when the parties failed to agree beforehand to the meaning of the provision or, as is usually the case, when they failed to consider the intended meaning of a provision.

■ Nevertheless, we are guided in our decision by a need to protect the intent of the parties. We decline to overrule *In re Kinoshita,* despite its inconsistency with federal policy favoring arbitration, particularly in international business disputes, because we are concerned that contracting parties may have (in theory at least) relied on that case in their formulation of an arbitration provision. We see no reason, however, why we may not confine *Kinoshita* to its precise facts. We are confident that parties who have actually relied on *Kinoshita* in an attempt to formulate a narrow arbitration provision, have adopted the exact language of the arbitration provision involved in *Kinoshita.* The provision involved in *Kinoshita* required arbitration of "any dispute or difference aris[ing] under" the agreement. Thus, to ensure that an arbitration clause is narrowly interpreted contracting parties must use the foregoing phrase or its equivalent, although the better course, obviously, would be to specify exactly which claims are and are not arbitrable.

By contrast, the arbitration provision involved in the instant case requires arbitration of "any *question* or dispute aris[ing] or *occur[ring]* under" the agreement (emphasis added). Defendants argue that a "question" may "occur" under a contract even when a "dispute" does not "arise" under the contract. *Cf. Stateside Machinery Co. v. Alperin,* 526 F.2d 480, 481 (3d Cir.1975) (clause requiring arbitration of "any unresolved issues" held to cover claim of fraudulent inducement); *In re Kinoshita, supra,* 287 F.2d at 953 ("The agreement to arbitrate is limited ... when it refers to disputes or controversies 'under' or 'arising

out of' the contract."); *Griffin v. Semperit,* 414 F.Supp. 1384, 1392 (S.D.Tex.1976) (phrase "or relating to" found unnecessary to render arbitration clause broad enough to cover fraudulent inducement claim). Although the distinction defendants draw is far from overwhelming, we find it at least as reasonable as the distinction drawn in *Kinoshita,* 287 F.2d at 953, between a "dispute or difference aris[ing] under" an agreement and a "controversy or claim arising out of or relating to" an agreement.

■ Having determined that *Kinoshita* is inapplicable to the instant case, our decision is guided by the federal policy considerations. "The United States Arbitration Act, ... reversing centuries of judicial hostility to arbitration agreements, was designed to allow parties to avoid 'the costliness and delays of litigation,' and to place arbitration agreements 'upon the same footing as other contracts.'" *Scherk v. Alberto-Culver Co., supra,* 417 U.S. at 510–11, 94 S.Ct. at 2452–53 (quoting H.R. Rep. No. 96, 68th Cong., 1st Sess., 1, 2 (1924)) (footnote omitted). The courts slowly but surely have adopted Congress' favorable attitude towards arbitration agreements. Compare *Wilko v. Swan,* 346 U.S. 427, 434–35, 74 S.Ct. 182, 186–87, 98 L.Ed. 168 (1953) (an "arrangement to arbitrate is a 'stipulation,' and ... the right to select the judicial forum is the kind of 'provision' that cannot be waived under § 14 of the Securities Act"), with *Scherk v. Alberto-Culver Co., supra,* 417 U.S. at 517–18, 94 S.Ct. at 2456–57 (refusing to apply *Wilko* to an international commercial agreement). The federal policy favoring arbitration requires us to construe arbitration clauses as broadly as possible.

[D]oubts as to arbitrability should be 'resolved in favor of coverage,' ... language excluding certain disputes from arbitration must be 'clear and unambiguous' or 'unmistakably clear' and ... arbitration should be ordered 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'

*Wire Service Guild v. United Press International*, 623 F.2d 257, 260 (2d Cir.1980) (*quoting International Ass'n of Machinists and Aerospace Workers, AFL–CIO v. General Electric Co.*, 406 F.2d 1046, 1048 (2d Cir.1969)). *See also Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 103 S.Ct. 927, 941–42, 74 L.Ed.2d 765 (1983); *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582–83, 80 S.Ct. 1347, 1352–53, 4 L.Ed.2d 1409 (1960).

■ Unless excluded, claims of fraud in the inducement of a contract are arbitrable. *See Prima Paint Corp. v. Flood & Conklin Manufacturing Co.*, 388 U.S. 395, 402–04, 87 S.Ct. 1801, 1805–06, 18 L.Ed.2d 1270 (1967). As the district court found, 576 F.Supp. at 571, the language of the arbitration clauses contained in the 1974 Agreements did not clearly exclude fraudulent inducement claims. Moreover, as in *Scherk v. Alberto-Culver Co., supra,* 417 U.S. at 515, 94 S.Ct. at 2455, the Agreements involve a "truly international" business transaction. The corporations are of diverse nationality. The product that is the subject matter of the Agreements is produced in one country and sold to various other countries. "[I]n the absence of the arbitration provision considerable uncertainty existed at the time of the agreement, and still exists, concerning the law applicable to the resolution of disputes arising out of the contract." *Id.* at 516, 94 S.Ct. at 2455 (footnote omitted). Samitri alleges violations of federal securities laws. Defendants are sure to contest the application of these laws to this transaction. *Cf. id.* at n. 9. In this case a provision "specifying in advance the forum in which disputes shall be litigated and the law to be applied" is necessary to achieve the requisite "orderliness and predictability." *Id.* at 516, 94 S.Ct. at 2455. Moreover, although we perceive no danger in the instant case that a United States court will be predisposed to favor Samitri over defendants, the district court's lack of familiarity with the subject matter of the Agreement and the law to be applied (Brazilian) presents a problem. We conclude that the arbitration clauses contained in the 1974 Agreements cover Samitri's claims of fraudulent inducement.

### III

■ Samitri argues that even if it claims based upon the 1974 Agreements are arbitrable, its claims based upon post-1974 Agreements, none of which contain an arbitration clause, are non-arbitrable. The post-1974 Agreements which Samitri claims were fraudulently induced include: (1) stock purchase agreements executed subsequent to the 1974 Agreements which provided for the purchase by Samitri of additional shares of Samarco; (2) the 1979 Agreement with Respect to Guaranty ("1979 Guaranty") under which Samitri agreed to reimburse 51% of defendants' payments pursuant to the 1979 Guaranty; and (3) the 1983 Memorandum of Agreement under which Samitri agreed to continue to contribute to Samarco and to purchase additional shares of Samarco preferred stock. The district court found that the post-1974 Agreements supplement and restate the 1974 Agreements and thus are subject to the arbitration clauses contained in the 1974 Agreements. We find no error in the district court's conclusion.

The 1974 Shareholders' Agreement expressly contemplated and provided for additional stock purchases by the parties "[i]f ... Samarco requires additional capital in order to complete the Project [or] ... in order to avoid the existence of an Event of Default Under the Credit Agreements ...." Affidavit of Kenneth E. Marklin, Exhibit B, §§ 2(f) & 2(g), at 9–10. In both instances the Shareholders' Agreement requires the parties to hold an extraordinary general meeting of shareholders of Samarco to vote their shares for an increase in the capital of Samarco in the amount called for by Samarco. The Agreement further requires the parties to subscribe for the additional shares of Samarco stock at the rate of 51% for Samitri and 49% for defendants. *Id.* The so-called stock purchase agreements were executed in accordance with the foregoing provisions of the 1974 Shareholders' Agreement and are subject

to the latter's arbitration clause. *Cf. Consumer Concepts, Inc. v. Mego Corp.*, 458 F.Supp. 543, 545 (S.D.N.Y.1978) (agreement between parties found subject to arbitration clause contained in umbrella agreement where umbrella agreement "govern[ed] the continuing relationship between" the parties). *Contrast Seaboard Coast Line R.R. v. Trailer Train Co.*, 690 F.2d 1343, 1349 (11th Cir.1982) (contract found not to constitute umbrella agreement where contract was "of limited application" and did "not profess to cover all present and future aspects of the relationship between" the parties). *Necchi S.p.A. v. Necchi Sewing Machine Sales Corp., supra,* 348 F.2d at 698 (disputes concerning contract without arbitration clause found nonarbitrable where contract "remained distinct and separate from" agreement containing arbitration clause).

Similarly, the 1974 Agreements expressly contemplated and provided for a guaranty of Samarco's indebtedness. The 1974 Shareholders' Agreement was amended in 1979 to state: "This Agreement, as amended as of August 16, 1979, has been executed in connection with ... the Guaranty dated as of the date hereof ...." Affidavit of Bruce T. Mitchell, Exhibit G, ¶ 1(b), at 3. Pursuant to the ownership ratio set forth in the 1974 Agreements, Samitri guaranteed 51% and defendants guaranteed 49% of Samarco's liabilities. *See* Affidavit of Stephen K. Brimhall, Exhibit A, at 2. The 1979 Guaranty Agreement supplemented the 1979 Guaranty and both Agreements supplemented the 1974 Agreements. Thus, disputes concerning the 1979 Guaranty Agreement are arbitrable under the arbitration clauses contained in the 1974 Agreements.

■ Only the 1982 Memorandum of Agreement was not expressly contemplated and provided for in the 1974 Agreements. The 1982 Memorandum, however, expressly refers to two agreements which contain arbitration clauses. In paragraph 3 of the

Memorandum Agreement, the parties "confirm[ed] their intention," to continue to contribute additional capital to Samarco "upon call by SAMARCO in accordance with paragraph 2 of the [1974] Shareholders' Agreement ...." In paragraph 4 of the Memorandum Agreement, Samitri agreed to purchase additional shares of Samarco preferred stock "subject to Paragraph 2 of the Agreement dated as of October 21, 1977 ...." Affidavit of Stephen K. Brimhall, Exhibit C, at 2. The 1977 ("Preferred Stock Purchase") Agreement referred to in the Memorandum Agreement contains an arbitration clause virtually identical to those contained in the 1974 Agreements. *See* Affidavit of Bruce T. Mitchell, Exhibit D, paragraph 8, at 25.[2] As the district court found, the 1982 Memorandum Agreement " 'cannot be read apart from the other arbitrable contracts and must be viewed as a supplement' to those contracts." 576 F.Supp. at 574 (quoting *Consumer Concepts, Inc. v. Mego Corp., supra,* 458 F.Supp. at 545). We agree with the district court's conclusion that the 1974 Agreements were an umbrella for the post-1974 Agreements and that disputes arising under the latter are arbitrable.

**IV**

■ We find no merit to Samitri's final claim that the litigation of its non-arbitrable RICO claims should be permitted to proceed notwithstanding arbitration of any other claims. The decision to stay litigation of non-arbitrable claims pending the outcome of litigation "is one left to the district court ... as a matter of its discretion to control its docket." *Moses H. Cone Memorial Hospital v. Mercury Construction Corp., supra,* 103 S.Ct. at 939 n. 23. Particularly because the arbitrable claims were found to dominate the case and the non-arbitrable claims were found to be of "uncertain" validity, the district court acted well within its discretion in staying litigation of the non-arbitrable claims. *See*

---

**2.** We find it significant that the only post-1974 Agreement that deviated from the structure set forth in the 1974 Agreements, which was the

1977 Stock Purchase Agreement, contained its own arbitration clause.

*N.V. Maatsschappij Voor Industriele Waarden v. A.O. Smith Corp.*, 532 F.2d 874, 876 (2d Cir.1976).

The decision of the district court is AFFIRMED.

KEARSE, Circuit Judge, dissenting:

With all due respect to the majority, I must dissent. I do not see a significant difference between "disputes or controversies 'under' or 'arising out of' the contract," at issue in *In re Kinoshita*, 287 F.2d 951, 953 (2d Cir.1961), and "any question or dispute ... aris[ing] or occur[ring] under" the contract, the arbitration provision in the present case. I would thus rule, as was held in *Kinoshita*, that claims of fraudulent inducement to enter into the contract fall outside the arbitration provision.