**Fred HOLK, D.V.M., and Wife,
Patricia Holk, Relators,**

v.

**The Honorable Webb BIARD, Judge, 6th
Judicial District Court, Fannin
County, Texas, Respondent.**

No. 06–96–00002–CV.

Court of Appeals of Texas,
Texarkana.

March 29, 1996.

Rehearing Overruled May 7, 1996.

&#x273D;4(4)

Steven K. Terry, Newsom, Terry, Newsom, Dallas, for Relators.

Charles Butler, Smith & Butler, Bonham, for Real Parties in Interest.

Before CORNELIUS, C.J., and BLEIL and GRANT, JJ.

## OPINION

CORNELIUS, Chief Justice.

In this original proceeding, Dr. Fred Holk seeks a writ of mandamus ordering the Honorable Webb Biard, Judge of the 6th District Court of Fannin County, Texas, to vacate his order rescinding an arbitration agreement and the arbitrator's decision pursuant to that agreement. Because we find that the arbitration agreement and the decision should not have been rescinded, we will conditionally grant the writ as requested.

In 1990 Dr. Holk entered into a contract with Dr. Howard Witcher to purchase a veterinary clinic. Subsequently, a dispute arose between the parties, and Dr. Holk sued to rescind the contract on the ground that Dr. Witcher had breached a noncompetition clause of the contract.

On November 1, 1994, the parties executed a written binding arbitration agreement pursuant to Tex.Civ.Prac. & Rem.Code Ann. § 154.027 (Vernon Supp.1996). The agreement provided:

(1) The sales contract entered into between the parties in 1990 under which Dr. Witcher sold the veterinary practice, including buildings and equipment, to Dr. Holk, would be rescinded.

(2) The parties agreed to execute all documents as necessary to rescind the contract within fifteen days of the date of the arbitration decision. Any disagreement between the parties as to the necessity, form, or content of such documents necessary to further the rescission was to be submitted to the arbitrator for decision.

(3) Possession of the veterinary practice, along with all customer lists and other necessary records, inventory, supplies, and assets, were to be turned over to Dr. Witcher by Dr. Holk on or before fifteen days after the date of the arbitration decision.

The agreement specified that two initial issues were to be submitted to the arbitrator: the payments, offsets, and credits, if any, that should be made between the parties to effect the rescission, and what attorney's fees had been incurred by Dr. Holk in pursuing his claim; and what amount of money Dr. Holk owed to Dr. Witcher, if any, for injuries sustained by Dr. Witcher when he was an employee of Dr. Holk, not to exceed $9,000.00.

The arbitration agreement also requested the trial court to order binding arbitration pursuant to the Texas general arbitration law. The court did so by an order on November 4, 1994. The order directed that if either party failed to abide by the arbitrator's decision, the arbitrator would certify the decision to the court for entry as a final judgment in the rescission suit.

Pursuant to the arbitration agreement and court order, the matter proceeded to arbitration on November 19, 1994, and the arbitrator issued his written decision on December 6, 1994. The decision provided that Dr. Holk would convey back to Dr. Witcher the fixed assets and other equipment included in the original sale; a promissory note given by Dr. Holk to Dr. Witcher for part of the purchase price would be canceled; and Dr. Witcher would pay Dr. Holk $171,969.31, representing prior payments by Dr. Holk and other credits due him and certain offsets due Dr. Witcher.

After the arbitrator rendered his decision and certified it to the trial court, another dispute arose between the parties. Among other things, Dr. Holk refused to convey the clinic assets to Dr. Witcher unless and until Dr. Witcher paid the monies that were due him under the arbitrator's decision, and Dr. Witcher would not pay the money to Dr. Holk unless Dr. Holk first conveyed the assets. Ultimately, the dispute concerning their respective duties under the arbitrator's decision led to Dr. Holk's filing a petition with the trial court to enforce the arbitrator's decision. Dr. Witcher countered with a petition asking the court to vacate, rescind, or modify the decision and cancel the arbitration agreement.

The trial court responded to these petitions by ordering that the arbitration agreement was canceled, the arbitrator's decision was not binding, and the parties were placed in the same positions they occupied before the agreement to arbitrate was executed. In its order rescinding arbitration, the trial court found the following:

(1) Dr. Holk had failed to turn over the clinic within fifteen days of the arbitrator's decision.

(2) The binding arbitration agreement required Dr. Holk to turn over the clinic within fifteen days of the decision.

(3) Dr. Holk, at the time of signing the agreement to arbitrate, never intended to turn over the clinic within fifteen days of the decision unless he was paid by Dr. Witcher.

(4) Dr. Holk had held exclusive possession of the clinic since the arbitrator's decision of December 6, 1994.

(5) Dr. Holk's action in failing to turn over the clinic constituted a repudiation of the binding arbitration agreement and stipulation.

(6) Dr. Holk had failed to turn over the clinic, and at the time Dr. Holk signed the agreement, he intended not to abide by that part of the agreement requiring the clinic to be turned over to Dr. Witcher within fifteen days of the arbitrator's decision.

■■■ The Texas General Arbitration Act provides that, on application of a party, the trial court shall confirm an arbitrator's decision unless grounds are urged for vacating or modifying the award pursuant to Section 171.014 and Section 171.015 of the Act. *See* TEX.CIV.PRAC. & REM.CODE ANN. § 171.013 (Vernon Supp.1996). When a decision or award is confirmed, judgment in conformity with it shall be rendered and enforced by the trial court as any other judgment. TEX.CIV. PRAC. & REM.CODE ANN. § 171.016 (Vernon Supp.1996).

■ An arbitrator's award has the same effect as a judgment of a court of last resort, and the trial judge may not substitute his judgment for the arbitrator's merely because he would have reached a different conclusion. *City of Baytown v. C.L. Winter, Inc.*, 886 S.W.2d 515, 518 (Tex.App.—Houston [1st Dist.] 1994, writ denied); *Riha v. Smulcer*, 843 S.W.2d 289, 293–94 (Tex.App.—Houston [14th Dist.] 1992, no writ).

■ The court may vacate an award or decision only if (1) the award was procured by fraud, corruption, or other undue means; (2) there was evident partiality, corruption, or willful misconduct by the arbitrator that prejudiced the rights of a party; (3) the arbitrator exceeded his power; (4) the arbitrator refused to postpone the hearing on good cause shown, or refused to hear evidence; or (5) there was no valid arbitration agreement, and the issue was not adversely determined in proceedings to stay the arbitration and the complaining party did not participate in the arbitration without raising the objection. TEX.CIV.PRAC. & REM.CODE

ANN. § 171.014 (Vernon Supp.1996); *see also City of San Antonio v. McKenzie Constr. Co.*, 136 Tex. 315, 150 S.W.2d 989 .(1941); *Albert v. Albert*, 391 S.W.2d 186 (Tex.Civ. App.—San Antonio 1965, writ ref'd n.r.e.).

■ Dr. Witcher pleaded that the arbitrator used bad faith and failed to exercise honest judgment, but there was no evidence to that effect and the trial court made no findings to that effect, so those allegations were not sufficient to set aside the arbitration agreement and decision.

■ Dr. Witcher takes the position that there was fraud in the inducement of the arbitration agreement and that the court was therefore justified in canceling the agreement on that ground. An arbitration agreement may be vacated if the agreement to arbitrate was itself fraudulently induced. TEX.CIV.PRAC. & REM.CODE ANN. § 171.014(a)(5); *Hearthshire Braeswood v. Bill Kelly Co.*, 849 S.W.2d 380 (Tex.App.— Houston [14th Dist.] 1993, writ denied); *Gulf Interstate Eng'g v. Pecos Pipeline*, 680 S.W.2d 879 (Tex.App.—Houston [1st Dist.] 1984, writ dism'd). But the fraudulent inducement must go the agreement to arbitrate itself and not to the underlying contract. It is not sufficient that fraud induced some part of the contract that is submitted to arbitration. The issue whether there is a valid agreement to arbitrate is separate from the issue of whether all or part of the underlying contract was breached. The former is a fact question for the trial court, while the latter is determined by the arbitrator. TEX. CIV.PRAC. & REM.CODE ANN. § 171.014(a)(5); *Shearson Lehman Bros., Inc. v. Kilgore*, 871 S.W.2d 925 (Tex.App.—Corpus Christi 1994, orig. proceeding); *Merrill Lynch v. Wilson*, 805 S.W.2d 38 (Tex.App.—El Paso 1991, no writ); *Shearson Lehman Hutton, Inc. v. McKay*, 763 S.W.2d 934 (Tex.App.—San Antonio 1989, orig. proceeding).

Dr. Witcher pleaded and the trial court found that Dr. Holk did not, at the time he signed the agreement to arbitrate, intend to turn over the clinic to Dr. Witcher without being paid for it. If this can be considered a fraudulent inducement, it is a fraudulent inducement or repudiation of the underlying contract, not to the arbitration clause itself.

Thus, it was not a proper ground for cancellation of the arbitration agreement or the arbitrator's decision.

■ Even if it could be concluded that Dr. Holk's intention not to deliver the assets was a fraudulent inducement to the arbitration agreement itself, rather than to the underlying contract as we believe, it would avail Dr. Witcher nothing in the context of this proceeding. When Dr. Witcher participated in the arbitration proceedings without objecting to the arbitration agreement's validity on the ground of fraudulent inducement, he waived any right to vacate the agreement and award on that ground. TEX.CIV.PRAC. & REM.CODE ANN. § 171.014(a)(5); *Al's Formal Wear of Houston, Inc. v. Sun*, 869 S.W.2d 442 (Tex. App.—Houston [1st Dist.] 1993, writ denied); *Island on Lake Travis v. Hayman Co.*, 834 S.W.2d 529 (Tex.App.—Austin 1992), *rev'd for entry of settlement agr.*, 848 S.W.2d 84 (Tex.1993). Dr. Witcher testified that his only disagreement with the arbitrator's award was with its final results.

■ TEX.CIV.PRAC. & REM.CODE ANN. § 171.022 (Vernon Supp.1996) provides that:

The provisions of this chapter apply only to the arbitration of controversies between members of associations or corporations which are exempt from the payment of federal income taxes pursuant to Section 501(c) of the U.S. Internal Revenue Code or which are incorporated pursuant to the Texas Non–Profit Corporation Act (Article 1396–1.01 et seq., Vernon's Texas Civil Statutes).

Reading this provision out of context from the preceding sections would indicate that the Texas General Arbitration Act is limited to disputes between members of nonprofit associations or corporations. A careful study of the origination and evolvement of this provision, as well as the entire Act, the textbooks and commentaries on the Act, and the cases that have decided statutory arbitration disputes has convinced us that the provision now designated as Section 171.022 applies only to specific performance of executory arbitration agreements, particularly those contained in the bylaws of nonprofit corporations. What is now designated Section

171.022 was originally a part of TEX.REV.CIV. STAT.ANN. art. 238–20.[1] That article expressly applied to specific enforcement of executory agreements to arbitrate future disputes. Its purpose was to "abrogate the common law arbitration rule prohibiting specific enforcement of executory arbitration agreements." Article 238–20 had four sections. What is now designated Section 171.022 was Section 3 of the former article. Section 3 was amended in 1985,[2] but still remained a part of Article 238–20, which related only to specific enforcement of executory arbitration agreements. In 1995, the entire Texas General Arbitration Act was moved from title 10, Articles 224 through 238 of the Texas Revised Civil Statutes and redesignated as Chapter 171 of the Texas Civil Practices and Remedies Code. What was Section 3 of Article 238–20 was carried forward into Chapter 171, but, undoubtedly through error, was separated from the former Article 238–20 (now designated as Section 171.021), and placed alone as Section 171.022, rather than being designated as subsection (d) of Section 171.021 as it should have been. This made the old Article 238–20, § 3 appear to limit the entire General Arbitration Act rather than applying only to specific performance of executory arbitration agreements in the by-laws of nonprofit corporations.

We believe this history and construction of the "applicability" clause now designated as Section 171.022 is confirmed as correct by these facts: The Texas General Arbitration Act expressly applies to any controversy between parties, except those arising under collective bargaining agreements, those involving acquisition of real or personal property valued at $50,000.00 or less, unless specifically agreed to in writing, claims for personal injury unless on advice of counsel, and workers' compensation claims. TEX.CIV. PRAC. & REM.CODE ANN. § 171.001 (Vernon Supp.1996). Texas adopted the Uniform Arbitration Act[3] with minor changes, and the uniform act is not limited to nonprofit corporations. No court decision, textbook, or commentary, has indicated that the General Arbitration Act is limited to nonprofit corporations. *See City of Baytown v. C.L. Winter, Inc., supra;* 2 WILLIAM V. DORSANEO III, TEXAS LITIGATION GUIDE Ch. 44 (1995), and specifically § 44.22; Robert Coulson, *Texas Arbitration–Modern Machinery Standing Idle,* 25 Sw.L.J. 290 (1971); Paul Carrington, *The 1965 General Arbitration Statute of Texas,* 20 Sw.L.J. 21 (1966).

■ We further conclude that, although Dr. Holk could have appealed the trial court's order rescinding the arbitration agreement and arbitrator's decision, that remedy would not be adequate under the facts of this case, considering the purpose of arbitration to effect a prompt and simple resolution of disputes, and other factors favoring such action. We therefore deem mandamus to be a proper remedy under the peculiar facts of this case.

For the reasons stated, we conclude that the trial court abused its discretion in canceling the arbitration agreement and setting aside the arbitrator's decision. We conditionally grant the writ of mandamus directing the trial court to vacate its order canceling the agreement and the decision, and to certify and enforce the arbitrator's decision as the judgment of the court.

Because we are confident that Judge Biard will voluntarily comply with this opinion, we will not issue the writ unless he fails to do so.

---

1. Act of May 24, 1983, 68th Leg., ch. 830, 1983 Tex.Gen.Laws 4748.

2. Act of May 21, 1985, 69th Leg., ch. 338, § 2, 1985 Tex.Gen.Laws 1406.

3. UNIF ARBITRATION ACT, 7 U.L.A. 5 (1955).