Kristine J. GERWELL and Edwin L. Gerwell, Appellants,

v.

Michelle MORAN, Appellee.

No. 04–99–00505–CV.

Court of Appeals of Texas, San Antonio.

Oct. 20, 1999.

Lori M. Cliffe, Jeffrey R. Davis, White & Davis, San Antonio, for appellant.

Richard J. Karam, Law Offices of Richard J. Karam, San Antonio, for appellee.

Sitting: PHIL HARDBERGER, Chief Justice, TOM RICKHOFF, Justice, CATHERINE STONE, Justice.

## OPINION

Opinion by: CATHERINE STONE, Justice.

This is an accelerated interlocutory appeal from an order denying the Gerwells' plea in abatement and motion to compel arbitration and stay litigation.[1] Because we find that the underlying dispute falls within the scope of an existing arbitration clause, we vacate the trial court's order and render judgment that the parties submit to binding arbitration in accordance with their arbitration agreement.

### FACTUAL AND PROCEDURAL HISTORY

In May 1993, appellant Kristine Gerwell, appellee Michelle Moran, and Suzette Dooley entered into a written partnership agreement (hereinafter "1993 agreement") to form The Sunrise Group, a partnership created for the purpose of purchasing and managing a professional office building. In general, the 1993 agreement covers all aspects of the partnership including, but not limited to, establishment of the partnership, capitalization, management, profits/losses and distribution, and respective liabilities for partnership debt. Each partner is liable for her pro rata share of the partnership debt. Relevant to the underlying dispute, the 1993 agreement expressly prohibits a partner from selling, assigning, mortgaging, hypothecating, or encumbering her interest in the partnership *without the express written permission* of all the remaining partners, without regard to interest (emphasis added). Also relevant to the underlying dispute, the 1993 agreement contains an arbitration clause, which provides:

> If *any controversy or claim arising out of this Agreement* cannot be settled by the Partners, the controversy or claims shall be settled by arbitration in the City of San Antonio, State of Texas, in accordance with the rules of the American Arbitration Association then in effect, and judgment on the award may be entered in any court having jurisdiction.

(emphasis added). Each partner owned a one-third interest in the partnership.

In 1994, Dooley assigned her interest in the partnership to Edwin Gerwell; the 1993 agreement was amended only to reflect Dooley's withdrawal and Edwin's addition to the partnership.

---

1. The appealable order also denied Moran's Application for a Temporary Injunction. Moran does not complain about that denial on appeal.

In late 1998—early 1999, Moran decided to leave the partnership and assign her one-third interest to the Gerwells. Pursuant to the 1993 agreement, the parties entered into a written agreement (the "assignment agreement") to execute Moran's transfer of interest to the Gerwells. In part, the assignment agreement provides that the Gerwell would pay Moran $85,000 *less "credits, adjustments, prorations of taxes, insurance, interest, rents and other liabilities of the partnership* for her interest in the partnership." (emphasis added). Before signing the assignment agreement, Moran inquired about both the meaning of the above-emphasized clause and specifically asked how a mortgage loan with NationsBank for the building where the partnership operated would be handled. With respect to her first-stated concern, Moran claims that Kristine Gerwell explained that the above-emphasized clause referred only to regular monthly expenses of the partnership and one repair item on the air conditioner unit, which would be deducted from the sale proceeds of $85,000. With respect to the outstanding mortgage loan, Moran claims that she and the Gerwells agreed that Moran would be released from the note liability.

The relevant clauses in the assignment agreement are as follows:

> In consideration of the agreement of Assignee to pay the sum equal to Eighty Five Thousand Dollars ($85,000) to Assignor, a deposit of One Thousand Dollars ($1000) paid to Assignor upon signing of Assignment of Partnership Interest to be held in trust;

> Cash, certified or local cashier's check delivered on closing and delivery of funding to complete payment of purchase price (after credits, adjustments, prorations of taxes, insurance, interest, rents and other liabilities of the partnership). Current partnership loan, for which Assignor is personally one of three guarantors, will have a release executed by NationsBank which will be forwarded to the Assignor in partial fulfillment of this agreement.

The assignment agreement does not contain an arbitration clause.

The parties signed the assignment agreement on January 25, 1999. On February 15, 1999, Moran received a check from the Gerwells for $22,811.93, an amount the Gerwells arrived at by deducting Moran's liabilities of the partnership from the $85,000 purchase price.

Believing she had been underpaid, Moran filed suit against Kristine and Edwin Gerwell, alleging breach of the assignment contract, breach of fiduciary duty, fraud, fraudulent inducement, and unjust enrichment. As plead, Moran alleged that the Gerwells breached the assignment agreement by wrongfully deducting her liability under the NationsBank loan from the $85,000 purchase price. Moran also alleged that the Gerwells fraudulently induced her into signing the assignment agreement by making misrepresentations about the extent of her liabilities and, specifically, certain liabilities that would we deducted from the purchase price. In addition to seeking monetary damages, Moran requested that the assignment be set aside due to the Gerwells' fraudulent conduct. Moran also sought a temporary injunction to prevent the Gerwells from transferring any interest in specific partnership property during the pendency of the proceeding.

In response, the Gerwells answered with a general denial and filed a plea in abatement and motion to compel arbitration and stay the litigation, arguing that the dispute was subject to the arbitration clause provided for in the 1993 agreement.

After a hearing on the Gerwells' motion to compel arbitration and Moran's application for temporary injunction, the trial court denied all requested relief. This appeal follows. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 171.098(a)(1) (Vernon Supp. 1999).

## Standard of Review

In order to compel arbitration, a party must establish the existence of a valid agreement to arbitrate and that the claims asserted fall within the scope of the arbitration agreement. *Leander Cut Stone Co. v. Brazos Masonry,* 987 S.W.2d 638, 640 (Tex.App.-Waco 1999, no pet.). In the instant case, it is undisputed that an arbitration agreement exists between the parties. We are thus presented with the sole issue of whether the underlying dispute falls within the scope of that arbitration agreement. Because this issue turns on contract construction—a question of law—we review the trial court's decision de novo. *Id.; Nationwide of Bryan, Inc. v. Dyer,* 969 S.W.2d 518, 520 (Tex.App.-Austin 1998, no pet.); *Certain Underwriters at Lloyd's of London v. Celebrity, Inc.,* 950 S.W.2d 375, 377 (Tex.App.-Tyler 1996, writ dism'd w.o.j.).

## Scope of Arbitration Clause

In conducting our review to determine whether the dispute regarding the assignment agreement must be arbitrated, we are mindful of the strong public policy favoring arbitration in Texas. *See Prudential Sec., Inc. v. Marshall,* 909 S.W.2d 896, 898 (Tex.1995) (orig.proceeding). Any doubts as to whether claims fall within the scope of an arbitration agreement must be resolved in favor of arbitration. *Cantella & Co., Inc. v. Goodwin,* 924 S.W.2d 943, 944 (Tex.1996) (orig.proceeding). Unless it can be said with "*'positive assurance* that the arbitration clause is not susceptible of an interpretation that covers the dispute,'" a motion to compel arbitration should not be denied. *United Parcel Service, Inc. v. McFall,* 940 S.W.2d 716, 719 (Tex.App.-Amarillo 1997, no writ) (quoting *AT & T Tech., Inc. v. Communications Workers,* 475 U.S. 643, 656, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986)). This strong public policy consideration, however, "cannot serve to stretch a contractual clause beyond the scope intended by the parties." *Babcock & Wilcox Co. v. PMAC, Ltd.,* 863 S.W.2d 225, 230 (Tex.App.-Houston [14th Dist.] 1993, writ denied).

We further note that tort claims are subject to arbitration. In determining whether an asserted tort claim is subject to arbitration, we consider "'whether the claim is so interwoven with the contract that it could not stand alone or, on the other hand, is completely independent of the contract and could be maintained without reference to the contract.'" *Fridl v. Cook,* 908 S.W.2d 507, 511 (Tex.App.-El Paso 1995, writ dism'd w.o.j.) (quoting *Valero Energy Corp. v. Wagner & Brown,* 777 S.W.2d 564, 566 (Tex.App.-El Paso 1989, writ denied)). Stated differently, the label of the claim is not controlling; rather, the focus lies upon the factual allegations of the complaint and their relationship to the subject matter encompassed by the arbitration clause. *McFall,* 940 S.W.2d at 719. As long as the asserted claims "*touch upon matters covered by the agreement,*" the claims are subject to arbitration regardless of the legal label attached to them. *Id.* (emphasis ours).

The Gerwells argue for arbitration based on the fact that the parties' dispute concerns issues governed by the 1993 agreement, namely the transfer of partnership interest and partnership liabilities. They argue that the arbitration clause, broadly written, was intended to apply to all disputes related to the partnership relationship, which would include a dispute involving an assignment of partnership interest. The Gerwells further argue that the assignment agreement exists only to effectuate the terms of the 1993 agreement; thus, without the backdrop of the 1993 agreement, the assignment of the interest between the parties is meaningless. The Gerwells conclude, therefore, that given the presumption of arbitrability and the fact that the dispute *touches upon* an issue relating to the 1993 agreement, the arbitration clause extends to Moran's claims.

In arguing against arbitration, Moran notes that the underlying dispute does not arise out of the 1993 agreement, which

contains the arbitration clause, but rather, the underlying dispute arises out of the separate assignment agreement. She thus concludes that the dispute is not subject to the arbitration clause of the 1993 agreement.

In support of her argument, Moran relies primarily upon *Weber v. Hall*, 929 S.W.2d 138 (Tex.App.-Houston [14th Dist.] 1996, mand. motion overruled). *Weber* involved an employment dispute concerning payment of sales commissions and fraudulent misrepresentations regarding those commissions. *Id.* at 140. When the employees filed suit, the employer sought to compel arbitration based on an arbitration clause contained in the employees' employment agreements. *Id.* The employees argued against arbitration, reasoning that their claims were brought under a separate sales agreement, not the employment agreement; thus, the arbitration clause did not cover the asserted claims. *Id.* at 140–41. The Houston court agreed with the employees' position, finding that because the two agreements did not serve the same purpose, did not have to be read together, and were not executed contemporaneously, the arbitration clause from the employment agreement did not apply to the dispute regarding the sales agreement. *Id.* at 142–43.

■ We are not persuaded by Moran's reliance on *Weber* or by her argument. The instant case and *Weber* appear to be factually similar. Both cases involve a situation where the parties entered into an original agreement and a subsequent agreement, with an arbitration clause contained only in the original agreement. And the plaintiffs in both cases asserted claims based not on the original agreement, but rather based on the subsequent agreement. What distinguishes our case from *Weber*, however, is the relationship between the two separate agreements. Here, unlike in *Weber*, the subsequently-executed agreement is contemplated by the original agreement. The 1993 agreement requires express written approval of all the partners for an assignment of interest to be effective. To the extent, therefore, that the assignment of interest was executed in accordance with the terms of the 1993 agreement, the two agreements, contrary to Moran's contention, are not so separate such that a dispute about the latter agreement does not concern or *touch upon* the former agreement. *See McFall*, 940 S.W.2d at 719. Indeed, to view the assignment agreement separate and apart from the 1993 agreement would be to view it in a vacuum. Stated differently, but for the 1993 agreement, Moran would not have a partnership interest to assign to the Gerwells.

Importantly, the arbitration clause at issue is broad. *See Dallas Cardiology Associates, P.A. v. Mallick*, 978 S.W.2d 209, 214–15 (Tex.App.-Texarkana 1998, pet. denied) (if arbitration agreement broad, arbitration should not be denied unless it can be said with positive assurance that dispute not covered). By its terms, the parties agreed to arbitrate any controversy or claim arising out of the 1993 agreement—an agreement the parties agree covered all aspects of the partnership relationship. An assignment of interest, even though it signals the end of the partnership relationship with respect to the exiting partner, indisputably involves the partnership agreement. Stated differently, that the dispute concerns the end of the partners' relationship does not mean that the dispute does not arise out of or concern the 1993 agreement. As pointed out by the Gerwells, part of the dispute involves what liabilites they were entitled to deduct from the purchase price. Determination of these liabilities necessarily involves review of the 1993 agreement, which specifies each party's interest and pro rata share of liabilities. Part of the dispute, therefore, relates to or touches upon the 1993 agreement. *Cf. id.*(finding that claims for interference with contract, slander, and defamation must be determined with reference to contract and, therefore, claims were subject to broadly-written arbitration

clause contained in contract). Moreover, given that the assignment agreement arose out of the 1993 agreement, we are unable to say with positive assurance that the dispute surrounding its interpretation or execution is not subject to the broadly-written arbitration clause contained in the 1993 agreement. *See McFall,* 940 S.W.2d at 719.

The result we reach today is consistent with at least one federal court's decision in a case involving similar facts. In *S.A. Mineracao Da Trindade–Samitri v. Utah International, Inc.,* 745 F.2d 190 (2nd Cir. 1984), the parties entered into an international iron ore mining venture. *Id.* at 192. Initially, three agreements, which set forth the structure and financing of the project, were executed. *Id.* One of these original agreements expressly contemplated and provided for additional stock purchases by the parties. *Id.* at 195. Each agreement contained an arbitration clause which provided that any question or dispute arising out of "this agreement/contract" shall be settled by arbitration. *Id.* at 192. As the project required additional financing, the parties made supplemental investments, executing a number of stock purchase agreements. *Id.* None of the subsequent agreements contained an arbitration clause. *Id.* Later, Samitri, one of the joint venturers, filed suit when some of the project's American business soured. *Id.* at 193. Samitri alleged that the defendants misrepresented that they had obtained long-term agreements with American purchasers. *Id.* Those misrepresentations, alleged Samitri, induced it to enter into its original agreements to invest and the subsequent agreements to reinvest in the project. *Id.* The defendants successfully argued to the district court that all of Samitri's claims were subject to the arbitration provisions of the original agreements. *Id.* On appeal, the Second Circuit agreed with the trial court's conclusion, reasoning that the claims based on the subsequent agreements, none of which contain an arbitration clause, were never-

theless subject to the arbitration agreements of the original agreement because they were executed in accordance with the original agreement. *Id.* at 195–96.

## FRAUDULENT INDUCEMENT

The *Samitri* decision also undermines Moran's claims that she should not be compelled to arbitrate because the assignment was fraudulently induced. A similar claim was rejected in *Samitri.* *Id.* at 195–96. The rule in Texas is that:

> "[t]he fraudulent inducement must go to the agreement to arbitrate itself and not to the underlying contract. It is not sufficient that fraud induced some part of the contract that is submitted to arbitration. The issue whether there is a valid agreement to arbitrate is separate from the issue of whether all or part of the underlying contract was breached. The former is a fact question for the trial court, while the latter is determined by the arbitrator."

*Holk v. Biard,* 920 S.W.2d 803, 807 (Tex. App.-Texarkana 1996, mand. motion overruled). In the instant case, Moran does not claim the 1993 agreement was fraudulently induced. Rather, she contends the assignment was procured by fraud. This latter issue is one to be determined by the arbitrator. *See id.*

## CONCLUSION

Because the assignment agreement arises out of and was executed in accordance with the 1993 agreement, we hold that the underlying dispute regarding the interpretation and execution of the assignment agreement falls within the scope of the arbitration clause contained in the 1993 agreement. The trial court's order denying the Gerwells' plea in abatement and motion to compel arbitration and stay litigation is vacated. Judgment is rendered that the parties submit to binding arbitration in accordance with their arbitration agreement.