NUMBER
13-00-368-CV





COURT OF APPEALS





THIRTEENTH DISTRICT OF TEXAS





CORPUS CHRISTI

____________________________________________________________________




CHRISTUS SPOHN HEALTH SYSTEM
CORPORATION, Appellant, 



v.





NUECES COUNTY
HOSPITAL DISTRICT, Appellee. 

____________________________________________________________________




On appeal from the
347th District Court

of
Nueces County, Texas.

____________________________________________________________________




O P I N I O N





Before Justices
Hinojosa, Yañez, and Chavez 





Opinion by Justice
Chavez

Nueces County Hospital District ("the Hospital District") has
contracted with Christus Spohn Health System Corporation ("Spohn") to
provide health care to indigent residents of Nueces
 County. The parties entered into
three related agreements; a "Master Agreement," a "Lease
Agreement," and an "Indigent Care Agreement." The instant
dispute concerns the means of calculating the Hospital District's payments to
Spohn and whether the Hospital District has fulfilled its obligation to use
reasonable efforts to persuade Nueces County to increase the maximum annual
payment to Spohn. The provisions governing the calculation of the payments and
the Hospital District's obligation to seek more funding are found in the
Indigent Care Agreement. 

Spohn filed a declaratory judgment action and a demand for arbitration. The
trial court entered an order staying arbitration, and
Spohn appeals from that order.(1) Spohn contends
that an arbitration provision in the Master Agreement applies throughout the
related agreements, and applies to the instant dispute. The Hospital District
contends that a particular provision in the Indigent Care Agreement provides
that a mandamus action is the appropriate means for resolving a dispute of this
kind. We hold that, while the mandamus provision relied on by the Hospital
District is inapplicable to the instant dispute, there is also no arbitration
provision that applies, and therefore we affirm the trial court's order staying
arbitration. 

The arbitration provision in the Master Agreement states: 

11.21 Arbitration. 

Except as otherwise provided herein, in the event of any controversy,
dispute, or claim arising out of this Agreement, or the breach thereof,
Landlord [the Hospital District] and Tenant [Spohn] acknowledge and agree that
. . .(2) such underlying dispute or controversy
shall be settled by arbitration conducted in Corpus Christi, Texas in
accordance with this Section 11.21 of the Agreement and the Commercial
Arbitration Rules of the American Arbitration Association ("AAA").We
must determine, then, whether the arbitration provision's reference to a
"controversy, dispute, or claim arising out of this Agreement"
encompasses the instant dispute. 

The Hospital District contends that the instant dispute is covered by the
following provision in the Indigent Care Agreement: 

7.4 Mandamus Action If the District fails to pay for Health Care
Services rendered by or on behalf of Provider out of funds lawfully available
and appropriated under an approved budget for that purpose, the District agrees
that Provider [Spohn] shall be, to the extent permitted by law, entitled to a
writ of mandamus . . . . (empasis in the
original). 



The instant dispute does not concern "funds lawfully available and
appropriated under an approved budget for that purpose." Indeed, part of
the Heath District's complaint is that sufficient funds have not been
appropriated. 

Traditionally, the writ of mandamus issues to compel the performance of a
ministerial act or duty. Walker v. Packer, 827 S.W.2d 833, 839 (Tex. 1992).
Ministerial acts are those where the law prescribes and defines the duties to
be performed with such precision and certainty as to leave nothing to the
exercise of discretion or judgment. Lancaster v. Chambers, 883 S.W.2d
650, 654 (Tex. 1994) (quoting
Rains v. Simpson, 50 Tex.
495, 501 (1878)). 

It makes sense, then, that where money has been appropriated for payment to
Spohn, but such funds have not been delivered to it, that a mandamus action
might be used to compel the performance of the ministerial function of actually
delivering the funds to Spohn. However, the alleged breaches by the Hospital
District concerning how payments are to be calculated and whether the Hospital
District has made adequate efforts to increase the amount appropriated for
Spohn are not matters where "the law prescribes and defines the duties to
be performed with such precision and certainty as to leave nothing to the
exercise of discretion or judgment," and, therefore, do not concern
ministerial acts. We conclude that the mandamus remedy set out in section 7.4
of the Indigent Care Agreement does not govern the instant dispute. 

We must determine, then, whether Spohn is correct that the arbitration
provision in the Master Agreement applies to this dispute. The Hospital
District contends that this arbitration provision applies only to disputes
arising from the provisions of the Master Agreement. Because this dispute
arises from the provisions of the Indigent Care Agreement, the Hospital
District contends, the arbitration provision does not apply. We agree with the
Hospital District. 

Historically, Texas law has
favored settling disputes by arbitration. EZ Pawn Corp.
v. Mancias, 934 S.W.2d 87, 90 (Tex. 1996).
Courts must resolve any doubts about an agreement to arbitrate in favor of
arbitration. Cantella & Co., Inc. v. Goodwin,
924 S.W.2d 943, 944 (Tex. 1996). Once the existence of an arbitration agreement has
been shown, the party resisting arbitration bears the burden of proving that
the dispute at issue falls outside of the arbitration agreement. Prudential Sec. Ins. v. Marshall,
909 S.W.2d 896, 900 (Tex. 1995). The policy favoring enforcement of arbitration
provisions is so compelling that a court should not deny arbitration
"unless it can be said with positive assurance that an arbitration clause
is not susceptible of an interpretation which would cover the dispute at
issue." Id. at 899. 

The arbitration provision relied on by Spohn from the Master Agreement
requires arbitration of disputes "arising out of this Agreement." The
first sentence of the Master Agreement explains that the phrase "this
Agreement" refers to the Master Agreement.(3)
Elsewhere, the phrase "this Agreement, and the
Related Agreements" is used to indicate application of a provision to both
the Master Agreement and the Lease Agreement and the Indigent Care Agreement.
Therefore, use of the phrase "this Agreement," without the phrase
"and the Related Agreements," indicates that a provision applies only
to the Master Agreement. This distinction indicates that the arbitration
provision in the Master Agreement, which applies to "this Agreement"
(not "this Agreement and the Related Agreements"), applies only to
the Master Agreement. 

Spohn refers to three other provisions in support of its argument that the
disputes arising from the Indigent Care Agreement are subject to the
arbitration provision of the Master Agreement. First, Spohn notes that the
recitals at the beginning of the Indigent Care Agreement "indicate that
the Indigent Care Agreement is being executed under the terms of the Master
Agreement." The recital states: 

WHEREAS, this Agreement constitutes a Related Agreement under the terms and
considerations expressed in the Master Agreement and the conditions to the
obligations of each of the parties to the Master Agreement and the Lease
Agreement to consummate the transactions contemplated thereby include the
execution and delivery of this Agreement by the parties hereto; 



Spohn would lift from context the phrase "under the terms and
considerations in the Master Agreement" and subsume the Indigent Care
Agreement under the terms of the Master Agreement. However, this provision
actually reinforces the interpretation that the Indigent Care Agreement is a
distinct "Related Agreement." "Under the terms and
considerations expressed in the Master Agreement," the parties
contemplated that an indigent care agreement, as a "Related Agreement,"
would be reached. 

Spohn also notes that the Indigent Care Agreement was attached as an
"Exhibit" to the Master Agreement, and that the Master Agreement
expressly includes the exhibits attached to it. The provision relied on by
Spohn for this argument states: 

This Agreement, (including all Exhibits and Schedules hereto) and the
Related Agreements (including all Exhibits and Schedules thereto) constitute
the entire agreement between the parties . . . 



Here again, specific reference is made to "the Related
Agreements." If the Indigent Care Agreement were nothing more than an
exhibit to the Master Agreement, then there would be no need for this provision
to refer separately to "the Related Agreements" to incorporate the
Indigent Care Agreement into the "entire agreement between the
parties." 

Spohn also argues that "the obligation to pay pursuant to the terms of
the Indigent Care Agreement is also incorporated into the Master Agreement at
section 10.7." Section 10.7 is the provision that expressly contemplates
the formation of an indigent care agreement. Spohn argues that this is further
indication that the contracts are "inseparable." We agree that the
contracts are related. They are, however, distinct. 

There is one other reason why we conclude that the arbitration provision in
the Master Agreement does not apply to this dispute. Construing the arbitration
provision in the Master Agreement as applicable throughout the related
agreements would render superfluous the arbitration provision included in the
Lease Agreement. The Lease Agreement contains a general provision that disputes
arising from the Lease Agreement will be settled by arbitration.(4)
In construing a contract, we must attempt to give effect to all contract
provisions so that none will be rendered meaningless. Kelley-Coppedge,
Inc. v. Highland Ins. Co., 908 S.W.2d 462, 464 (Tex. 1998).
To construe the arbitration provision of the Master Agreement as applying to
the Indigent Care Agreement and the Lease Agreement would render meaningless
the arbitration provision in the Lease Agreement. 

Spohn relies on a provision in the Indigent Care Agreement that the remedies
of the Indigent Care Agreement are "in addition to, and not in limitation
of" the remedies set out in the Master Agreement. However, the
construction urged by Spohn would render meaningless several provisions of the
agreements. The provisions states: 

9.7 Remedies. All rights, powers and remedies granted to either party
by any particular term of this Agreement are in addition to, and not in
limitation of, any rights, powers or remedies which it has under any other term
of this Agreement, including, without limitation, Section 4.2 and 6.2 and
Article VII, the Master Agreement or the Lease Agreement, at common law, in
equity, by statute, or otherwise. 



This provision cannot mean that the provisions of the agreements which
provide specific remedies are merely optional and do not limit the parties to
those stated remedies. Were this so, then the arbitration provision which Spohn
seeks to incorporate from the Master Agreement would also be optional, and
parties would retain their rights to seek remedies "at common law, in
equity, by statute, or otherwise." An "optional" arbitration
provision, which binds neither party, would be meaningless, because parties
always have the right to mutually agree to use arbitration to settle a dispute.
We conclude that the construction urged by Spohn must fail because it would
render provisions of the agreement meaningless. Kelley-Coppedge,
Inc., 980 S.W.2d at 464. 

Spohn also relies on Gerwell v. Moran, 10 S.W.3d 28 (Tex. App.--San
Antonio 1999, no pet.). In that case, the parties entered into successive
agreements, the former containing an arbitration provision, and the latter not.
The court concluded that because the dispute at hand touched upon issues
related to the earlier agreement, the arbitration provision in that agreement
applied. Id. at 32-33.
However, the Gerwell court was not confronted with the insurmountable
contract construction obstacles presented by the construction urged by Spohn in
this case. Therefore, we consider Gerwell inapposite. 

Finally, Spohn argues that the agreements indicate a general intent to
resolve disputes in an amicable and private manner, and refer to the affidavit
of David Lopez, former executive director of the Hospital Department, as
evidence of this intent. However, Spohn fails to justify reference to such
parol evidence. Only after a contract is found to be ambiguous may parol evidence
be admitted for the purpose of ascertaining the true intentions of the parties
expressed in the contract. See Friendswood Dev. Co. v.
McDade + Co., 926 S.W.2d 280, 283 (Tex. 1996).


We conclude that no arbitration provision applies to the disputes at issue
in this case. The order of the trial court is affirmed. 

MELCHOR CHAVEZ 

Justice 



Publish. 

Tex. R. App. P. 47.3. 



Opinion delivered and filed this 

the 19th day of October, 2000. 

1. We have jurisdiction over this interlocutory appeal
under section 171.098 of the Texas Civil Practice and Remedies Code (Vernon
Supp. 2000). 

2. The omitted words allowed for seeking temporary or
preliminary relief in court or for the tolling of limitations statutes. 

3. The first sentence begins: "THIS MASTER AGREEMENT
("this Agreement") is entered into and effective as to the 6th day of
August, 1996, by and between . . . ." 

4. The provision states: 

10.25 Arbitration 

Except as otherwise provided herein, in the event of any controversy,
dispute or claim arising out of, or relating to, this Lease, or the breach
thereof, Landlord and Tenant acknowledge and agree that . . . such underlying
controversy, dispute or claim shall be settled by arbitration conducted in
Corpus Christi, Texas in accordance with this Section 10.25 of this Lease and
the Commercial Arbitration Rules of the American Arbitration Association
("AAA").