Jane Bland, Justice
Christopher Bell appeals the trial court's judgment adjudicating his guilt and sentencing *744 him to five years' confinement.[1] Bell contends that the trial court abused its discretion by revoking community supervision and adjudicating him guilty because the State failed to prove he violated a condition of his community supervision. He further contends that the terms of his community supervision unconstitutionally compelled him to waive his constitutional right against self-incrimination. We affirm.
BACKGROUND
In 2009, Bell entered an open plea of no contest to the offense of injury to a child, a third-degree felony. The trial court deferred adjudication of guilt and placed Bell on seven years' community supervision. The conditions of community supervision included an order that Bell "submit to a psychological/psychiatric evaluation and participate in any treatment deemed necessary by said evaluation." Pursuant to this condition and his evaluation, Bell was required to participate in a sex-offender treatment program.
Bell was referred for treatment to Holly Miller, an associate dean and professor in criminal justice at Sam Houston State University, who holds a Ph.D. in forensic clinical psychology and a state license in sex-offender treatment. Miller uses a four-phase treatment program that gives each participant goals to accomplish before he can continue to the next phase. She explained that the first-phase goals include taking responsibility for the offending behavior, gaining an understanding of how the behavior has affected the individual's life, beginning to understand how the offense could affect a victim, and learning to identify thinking errors.
After six years in treatment, Bell completed the first phase but was not progressing in the second phase of the treatment plan. The second phase, Miller explained, requires the offender to acquire a detailed understanding of the risk factors that contributed to his offending behavior, looking at his life history and identifying the changes that he must make to prevent its recurrence.
Bell's resistance to talking about the issues identified by Miller's testing led Miller to terminate Bell from the treatment program during the summer of 2016. At that time, the State moved to adjudicate Bell's guilt, alleging that he failed to comply with the treatment program. During the hearing, the State withdrew its motion after the trial court found good cause to extend the terms of Bell's community supervision for two years. The trial court admonished Bell that he was required to participate in and successfully complete the sex-offender treatment program. The trial court also amended the terms of Bell's community supervision, including as number 21 the requirement that he
[a]bide by an extension to the term of supervision of 24 months to allow the defendant additional time to actively participate and successfully complete his Sex Offender Treatment Program.
Bell was readmitted to Miller's program. In resuming work on the second phase, Bell was required to complete testing, the results of which showed that Bell experienced sexual arousal to both children and aggression. These results led Miller to *745 shift Bell's treatment goals and require that Bell learn to identify his arousal pattern so that he could reduce his responses and control his sexual impulses.
His participation improved; according to Miller, Bell appeared to put forth more effort and show an interest in making progress toward his goals. By November, though, Bell came to therapy several times without completing his work.
Miller gave Bell an assignment that required him to make a group presentation. Miller explained the assignment to Bell, telling him that he had to acknowledge and provide an account of his deviant sexual arousal, identifying possible contributing factors. Bell began to work on the assignment, but stopped. Miller discussed the assignment again with Bell. At that point, instead of making the presentation, Bell denied any sexual attraction to children, claimed that the test results were inaccurate, and told Miller that he was not going to work on the issue. Miller terminated Bell from the treatment group.
In May 2017, the State filed a second motion to adjudicate Bell's guilt based on Bell's violation of condition 15 of his community supervision, which requires that Bell "submit to a psychological/psychiatric evaluation and participate in any treatment deemed necessary by said evaluation." The State alleged that Bell "failed to participate in treatment deemed necessary by a psychological evaluation in that he failed to follow his treatment plan and was discharged unsuccessfully on January 24, 2017."
At the hearing on the State's second motion to adjudicate, Miller testified that, in the time since the first hearing, Bell attended all of the scheduled therapy sessions before his termination. Miller gave Bell a less-than-satisfactory rating, however, in: actively participating in sessions; reporting sexual impulses; providing feedback to others; motivation to make changes; honesty; disclosure of behaviors and treatment; empathy for victims; and insight into contributing factors. Bell came to therapy "several times with nothing to present, with no work to present, even though he was given very specific instructions of what to present between each group [session]." Miller terminated Bell from the group after he stated that he was refusing to follow the treatment plan because the test results "were inaccurate" and further that "he was never going to state that he had sexual attraction to children." Miller opined that Bell's denial of his attraction to children "would make it impossible to reduce [his] sexual arousal to children." She testified that she did not terminate Bell from the treatment program based on his desire to see another counselor, and stated that she "gave him that option."
Bell testified that, contrary to Miller's testimony, he had admitted to his attraction to children and aggression in therapy, but he maintained that he did not agree with the test results used to identify his therapeutic goals because he "did not believe" in the test. He further testified that even though he did not believe in the test, "I did accept the fact that I had an aggression-an attraction towards children." He claimed that Miller terminated him from therapy because she knew that he was looking into seeing a different therapist. Bell stated that Miller "kept saying 'I stabbed her in the back with another counselor.' " Bell told the trial court about his efforts to contact alternative sex-offender counselors; all were unavailing.
The trial court granted the State's motion, adjudicated Bell's guilt, and sentenced Bell to five years' confinement.
DISCUSSION
Bell challenges the trial court's adjudication order, contending that: (1) his *746 community supervision requirement for psychological evaluation and treatment violated his Fifth Amendment right against self-incrimination; and (2) insufficient evidence supports the trial court's determination that he violated a term of his supervision and thus, the court abused its discretion in revoking his community supervision.
I. Standard of Review
The trial court's decision on a motion for adjudication of guilt and to revoke deferred adjudication community supervision is reviewable in the same manner as revocation of ordinary community supervision. TEX. CODE CRIM. PROC. art. 42.12 § 5(b). The State must prove by a preponderance of the evidence that the person on community supervision violated a term of his supervision. Hacker v. State , 389 S.W.3d 860, 864-65 (Tex. Crim. App. 2013) ; Rickels v. State , 202 S.W.3d 759, 763-64 (Tex. Crim. App. 2006). The State meets this standard when the "greater weight of the credible evidence [creates] a reasonable belief that the defendant violated a condition of his community supervision." Rickels , 202 S.W.3d at 763-64 (quoting Scamardo v. State , 517 S.W.2d 293, 298 (Tex. Crim. App. 1974) ).
Our review of an order adjudicating guilt and revoking community supervision is limited to determining whether the trial court abused its discretion in determining that the defendant violated the terms of his community supervision. See Rickels , 202 S.W.3d at 763 ; Duncan v. State , 321 S.W.3d 53, 56-57 (Tex. App.-Houston [1st Dist.] 2010, pet. ref'd). We view the evidence in the light most favorable to the trial court's order. See Garrett v. State , 619 S.W.2d 172, 174 (Tex. Crim. App. [Panel Op.] 1981) ; Canseco v. State , 199 S.W.3d 437, 439 (Tex. App.-Houston [1st Dist.] 2006, pet. ref'd). As the trier of fact at a revocation proceeding, the trial court determines the credibility of the witnesses and the weight to be given to their testimony. Garrett , 619 S.W.2d at 174 ; Armstrong v. State , 82 S.W.3d 444, 448 (Tex. App.-Austin 2002, pet. ref'd).
II. Waiver of Right Against Self-Incrimination
Bell contends that the trial court's decision to revoke his community supervision due to his termination from sex-offender treatment and Miller's testimony that he did not successfully participate in the program violated his right against self-incrimination guaranteed under the Fifth Amendment of the United States Constitution and article I, section 10 of the Texas Constitution.[2] Bell challenges the requirement of Miller's sex-offender treatment plan that-consistent with his physiological responses recorded by her testing-he admit to his sexual attraction to children and aggression.
Under the Fifth Amendment to the United States Constitution, no person "shall be compelled in any criminal case to be a witness against himself." U.S. CONST. amend. V. "It is well settled that the Fifth Amendment insulates probationers from compelled self-incrimination." Dansby v. State (Dansby I ), 398 S.W.3d 233, 239 (Tex. Crim. App. 2013). In connection with that right, "a state may 'not constitutionally carry out a threat to revoke probation for the legitimate exercise of the Fifth Amendment privilege.' " Id. at 240 (quoting *747 Minnesota v. Murphy , 465 U.S. 420, 438, 104 S.Ct. 1136, 1148, 79 L.Ed.2d 409 (1984) ). Thus, while a probationer may be compelled "to appear and give testimony about matters relevant to his probationary status," he cannot be "required ... to choose between making incriminating statements and jeopardizing his conditional liberty by remaining silent." Murphy , 465 U.S. at 436, 104 S.Ct. at 1147, cited in Dansby , 398 S.W.3d at 240.
One must invoke the privilege to exercise it. The "privilege against compelled self-incrimination is not ordinarily self-executing." Chapman v. State , 115 S.W.3d 1, 6 (Tex. Crim. App. 2003). Rather, with a few exceptions, none of which applies here, "a criminal defendant must timely assert his privilege." See ids="9088118" index="19" url="https://cite.case.law/sw3d/115/1/#p6">id. If he does not, his statements will not be considered "compelled" within the meaning of the Fifth Amendment. Id. "Just as a defendant can fail to invoke his Fifth Amendment privilege, a defendant can also voluntarily forfeit his Fifth Amendment privilege if he freely chooses to take the stand and make incriminating statements." Johnson v. State , 357 S.W.3d 653, 658 (Tex. Crim. App. 2012).
Even assuming that admission of an attraction to children implicates his Fifth Amendment right, Bell never invoked this right and obtained a ruling on the privilege, either during his supervision or at the hearing on the motion to adjudicate. Before the hearing, Bell filed a written objection, contending that condition 15 compelled him to admit attraction to children in violation of his right against self-incrimination. But he did not obtain a ruling on that objection. Instead, at the hearing, he voluntarily testified without objection that he had admitted to his attraction to children during therapy sessions with Miller. His contention was that he had complied with condition 15, but that Miller was an unreasonable counselor who could not finish his therapy in two years, and she had terminated him because he was approaching other counselors. Bell did not assert his right against self-incrimination again until his counsel's closing argument, after he had testified. He did not obtain a ruling on that assertion.
Neither does Bell claim to have invoked the right against self-incrimination as a basis for refusing to comply during therapy, when Miller asked him to acknowledge his sexual attraction to children. On the contrary, consistent with Bell's trial testimony, Miller explained that Bell acknowledged these attractions, but later retracted those admissions and affirmatively denied having a problem. Because Bell did not invoke his Fifth Amendment privilege, nothing in the record indicates that Bell's refusal to incriminate himself caused his termination from the sex-offender counseling program.
Bell relies on Dansby I , Dansby v. State (Dansby II ), 448 S.W.3d 441 (Tex. Crim. App. 2014), and Pena v. State , 508 S.W.3d 599 (Tex. App.-El Paso 2016, pet. ref'd), as support for reversing the adjudication. These cases are inapposite because, unlike the defendants in those cases, Bell failed to invoke the Fifth Amendment and obtain a ruling from the trial court.
In Dansby , the defendant was required to take a polygraph examination in connection with his sex-offender treatment. Dansby I , 398 S.W.3d at 233-34. He told the polygrapher at the beginning of the examination that "his attorney told him not to say anything that might result in a prosecution." Id. at 235. The defendant thereafter steadfastly refused to confess to the commission of earlier sex offenses. Id. at 242. Because the State did not show a basis for the defendant's discharge from the sex-offender treatment program independent of the defendant's Fifth Amendment claim, the Court of Criminal Appeals *748 reversed the appellate court's decision upholding the adjudication of the defendant's guilt. Id. at 234.
On remand, the court of appeals concluded that the defendant had failed to preserve his Fifth Amendment right because he had not raised it in objection to the community supervision requirement when it was imposed. Dansby II , 448 S.W.3d at 446. The Court of Criminal Appeals again reversed, concluding that the community-supervision requirement did not give the defendant notice that he would have to waive his Fifth Amendment right and holding that the defendant "did not forfeit his complaint that his Fifth Amendment rights were violated by his refusal to answer questions during sex-offender counseling and a polygraph examination about sexual-assault victims other than the complainant." Id. at 447-52.
In this case, in contrast, Bell stopped participating in the treatment program other than to attend meetings. He did not refuse to answer the question that he was attracted to children based on a privilege against self-incrimination. He answered it by admitting to the attraction, but later stopped participating in the program based on his belief that the evaluation indicating his attraction was in error. Because Bell never asserted his Fifth Amendment right either during therapy or in his testimony at the hearing, and did not obtain a ruling on his assertion of the privilege, Dansby II is inapplicable.
In Pena , the defendant, who had negotiated a guilty plea to the sexual assault of a teenager, was terminated from a sex-offender treatment program after asserting his Fifth Amendment privilege. 508 S.W.3d at 603. After Pena was told that he would not be allowed to participate in the program unless he admitted to the misconduct, he asserted his right against self-incrimination, refusing to admit that he began sexually abusing the victim when she was in elementary school. Id. Pena was terminated, and the trial court granted the State's motion to adjudicate based on his failure to participate in the program. Id. at 606. Following the Dansby decisions, the El Paso Court of Appeals held that the trial court abused its discretion by adjudicating the defendant's guilt based on the exercise of his Fifth Amendment right. Id. at 607.
Because the record shows that Bell failed to timely invoke the Fifth Amendment privilege and voluntarily disclosed the allegedly incriminatory statements at issue, we hold that he has failed to preserve this challenge for our review.
III. Revocation of Community Supervision
Bell contends that the evidence adduced at the hearing does not support the trial court's decision to revoke his community supervision. He claims that the condition requires nothing more than "participation."
Bell accepted the terms of community supervision when the trial court imposed them. He did not challenge condition 15 as vague. As a result of Bell's psychological examination, Bell was required to participate in sex-offender treatment. The trial court properly delegated to Miller the authority to create and administer rules and regulations applicable to the sex-offender treatment program. See McArthur v. State , 1 S.W.3d 323, 334 (Tex. App.-Fort Worth 1999, pet. ref'd) ; see also Salmons v. State , 571 S.W.2d 29, 30 (Tex. Crim. App. [Panel Op.] 1978) ("We hold that in ordering a probationer to obey the rules and regulations of the community-based facility in which he is placed, a trial court does not thereby improperly *749 delegate to the facility the authority to specify the terms of probation.").
Miller explained that Bell's refusal to work on the second phase of her program, which required him to acknowledge the thoughts and feelings that led Bell to commit the underlying offense, caused her to terminate him from the program the first time. In the first hearing, the trial court admonished Bell that if he were readmitted into the program, he would have to work toward the goals imposed by the program and specifically on the issues that Miller had identified. The trial court reduced these admonishments to writing in an amendment to Bell's conditions of community supervision, which, albeit under a different number, informs condition 15's participation requirement by specifying that Bell "actively participate and successfully complete" his program. The trial court made clear that it ordered the two-year extension so that Bell would have adequate time to successfully complete the four phases of Miller's treatment program.
Miller testified that after the first hearing, Bell made some progress, but Bell was not satisfactory in participation during the sessions held between the first hearing and the second hearing. In January, Miller recounted, Bell reverted to denying that he had deviant sexual attraction to children and declared that he was "not going to be saying that he did." Bell was required to work towards his second-phase goals to continue his participation in the program. Because he refused to do so, Miller terminated Bell from the program.
Viewed in the light most favorable to the trial court's order, the greater weight of this evidence creates a reasonable belief that Bell violated condition 15 by failing to "participate in any treatment deemed necessary" by his psychiatric/psychological evaluation. See Rickels , 202 S.W.3d at 763-64. We therefore hold that the trial court acted within its discretion in adjudicating Bell's guilt and revoking his community supervision.
CONCLUSION
We affirm the judgment of the trial court.

Pursuant to the Texas Supreme Court's docket equalization powers, this appeal was transferred from the Tenth Court of Appeals to this Court on July 18, 2017. See Tex. Gov't Code § 73.001 ; Order Regarding Transfer of Cases From Courts of Appeals, Misc. Docket No. 17-9066 (Tex. June 20, 2017). We are unaware of any conflict between precedent of the Tenth Court of Appeals and that of this Court on any relevant issue. See Tex. R. App. P. 41.3.

Because the privilege against self-incrimination has substantially the same scope under both the Texas Constitution and the United States Constitution, and Bell does not distinguish between his state and federal claims, we consider them under the Fifth Amendment only. See Cobb v. State , 85 S.W.3d 258, 267 n.30 (Tex. Crim. App. 2002).