**Opinion issued June 18, 2019**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-18-00611-CR

————————————

**CLIFFORD LEVIENE POWELL, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

On Appeal from the 371st District Court
Tarrant County, Texas[1]
Trial Court Case No. 1495685D

---

[1]     Pursuant to its docket equalization authority, the Supreme Court of Texas transferred this appeal to this Court. *See* TEX. GOV'T CODE § 73.001 (authorizing transfer of cases).

## MEMORANDUM OPINION

Appellant, Clifford Leviene Powell, pleaded guilty, with an agreed recommendation from the State as to punishment, to the third-degree-felony offense of using a vehicle to evade arrest or detention.[2] The trial court deferred adjudication of appellant's guilt, placed him on community supervision for four years, and assessed a fine of $400. Subsequently, the State moved to adjudicate appellant's guilt, alleging that he had violated the conditions of his community supervision. After a hearing, the trial court found appellant guilty and assessed his punishment at confinement for four years and a fine of $380. In two issues, appellant contends that (1) the trial court violated his due process rights by revoking his community supervision and adjudicating his guilt and (2) the judgment should be reformed to reflect that he pleaded "not true" to the allegations in the State's motion to adjudicate.

We modify the trial court's judgment and affirm as modified.

## Background

Appellant was indicted for the offense of using a vehicle to intentionally evade a peace officer who was attempting to arrest or detain him. On November 2, 2017, in accordance with appellant's plea agreement with the State, the trial court deferred adjudication of appellant's guilt and placed him on community supervision, subject

---

[2]     *See* TEX. PENAL CODE § 38.04(b)(2)(A).

2

to certain conditions, including that he "successfully complete" the Tarrant County Community Supervision and Corrections Department "Intensive Day Treatment (Jail), Aftercare, and IDT Re-Entry Court" ("IDT program").

On April 16, 2018, the State moved to adjudicate appellant's guilt on the ground that he had violated the terms of his community supervision by being "unsuccessfully discharged" from the IDT program on February 5, 2018 and April 6, 2018. At a hearing on the State's motion, appellant pleaded "not true" to the allegations.

Duane Coffee, an IDT program supervisor, testified that program counselors are not authorized to make discharge decisions. Rather, he handled all discharges from the program. He explained that the first phase of the IDT program is 90 days in length and that, to complete the program successfully, all participants are required to progress to "level 3." The program is designed to prevent participants from "just doing their time in the program" and not learning anything. Thus, one ground for discharge from the program is failing to make progress. He testified that appellant began the IDT program twice and was twice "unsuccessfully discharged." The first time, on February 5, 2018, appellant was discharged because he "was not making the appropriate amount of progress," and the trial court amended the conditions of appellant's community supervision and ordered him to serve 60 days' confinement. Afterwards, on April 4, 2018, the trial court ordered appellant to re-start the IDT

3

program. On April 6, 2018, however, appellant refused to sign intake documents, which included the required consent for treatment, and he was discharged.

Rodney Sikes, an IDT counselor, testified that appellant initially began the program on January 5, 2018, attended orientation, and completed the required documents. Thereafter, appellant progressed "somewhat," but was resentful and fixated on challenging the reasons that he had been assigned to the program. Appellant insisted that he did not have a substance abuse problem and that he had been "wronged by having to be in the program." On February 5, 2018, appellant was discharged from the program. After the trial court gave appellant 60 days' confinement to "re-evaluate the situation," appellant returned to IDT and sat through orientation. However, he refused to sign any of the required documents. Sikes explained that IDT is a "HIPAA-protected program, so what one person talks about in substance abuse can't be shared with other people unless they sign that documentation, which is federal law." Although Sikes explained to appellant that he would be discharged, appellant refused to sign the required documents.

Ann Henderson, a lead counselor for the IDT program, testified that appellant did not participate in the program as required because he refused to perform the tasks that he was assigned. Rather, appellant voiced that he was not supposed to be in the program, resisted the instructions that he was given, and did not "do the requirements to progress to level 1."

4

Douglas Jones, appellant's community supervision officer, testified that appellant was ordered to attend and successfully complete IDT. He explained that IDT counselors "don't usually just terminate someone from IDT." Rather, on February 5, 2018, appellant was brought to the trial court to address his behavioral issues. The IDT counselors discussed with the trial court the reasons that a discharge was recommended, and the trial court made the decision to discharge him. The trial court then amended the terms and conditions of appellant's community supervision by ordering him to serve 60 days of conditional jail time and ordering him to restart the program upon the completion of those days. And, once the trial court ordered appellant back into the program, he was admitted. His subsequent refusal to participate by signing the required documentation constituted grounds for discharge.

Appellant testified that he understood that his failure to comply with the trial court's order that he successfully complete the IDT program could result in his being sentenced to confinement.

The trial court found "true" that appellant had violated the conditions of his community supervision, found him guilty of the underlying offense, and assessed his punishment at confinement for four years.

## Revocation and Adjudication

In his first issue, appellant asserts: "The trial court abused its discretion and violated due process in adjudicating guilt and revoking community supervision by

sustaining the allegation that [he] was unsuccessfully discharged from a court-ordered treatment program."

Appellate review of an order revoking community supervision and adjudicating guilt is limited to determining whether the trial court abused its discretion. *See Rickels v. State*, 202 S.W.3d 759, 763 (Tex. Crim. App. 2006); *see also* TEX. CODE CRIM. PROC. art. 42A.108(b). A trial court has the discretion to revoke community supervision if a preponderance of the evidence supports one of the State's allegations that the defendant violated a condition of his community supervision. *Leonard v. State*, 385 S.W.3d 570, 576 (Tex. Crim. App. 2012); *see also Garcia v. State*, 387 S.W.3d 20, 26 (Tex. Crim. App. 2012) (holding that proof of single violation of terms of community supervision is sufficient to support trial court's decision to revoke). The evidence meets the preponderance standard if the greater weight of the credible evidence creates a reasonable belief that a defendant has violated a condition of his community supervision. *Rickels*, 202 S.W.3d at 764; *Bell v. State*, 554 S.W.3d 742, 746 (Tex. App.—Houston [1st Dist.] 2018, pet. ref'd). We examine the evidence in the light most favorable to the trial court's order. *Bell*, 554 S.W.3d at 746. As the sole trier of fact, the trial court determines the credibility of witnesses and the weight to be given to their testimony. *Id.*

Revocation involves a loss of liberty and implicates due process. *Leonard*, 385 S.W.3d at 577. Thus, the "central issue to be determined in reviewing a trial

6

court's exercise of discretion in a [community supervision] revocation case is whether the [defendant] was afforded due process of law." *Id.* The Texas Court of Criminal Appeals has explained:

> It would surely offend due process if a defendant were discharged from his therapy program for a wholly inappropriate reason—such as illegal discrimination or mere caprice—and the bare fact of that discharge were used as a basis to revoke the defendant's community supervision. Yet, by an ordinary abuse-of-discretion review, such a revocation would be sustained.

*Id.* Accordingly, when a trial court, through a condition of a defendant's community supervision, makes his compliance with the terms of his community supervision subject to the discretion of a third party, we must also, in determining whether the trial court abused its discretion, "examine the third party's use of discretion to ensure that it was used on a basis that was rational and connected to the purposes of community supervision." *Id.*

Here, the record shows that the trial court ordered appellant to "successfully complete" the IDT program. The State moved to adjudicate appellant's guilt on the ground that he had been "unsuccessfully discharged" from the IDT program on February 5, 2018 and April 6, 2018. At the hearing on the State's motion to adjudicate, appellant testified that he understood that his failure to comply with the trial court's order that he successfully complete the IDT program could result in his being sentenced to confinement.

7

Coffee testified that, on February 5, 2018, appellant was discharged from the IDT program because he "was not making the appropriate amount of progress." He explained that the first phase of the IDT program is 90 days in length and that, to complete the program successfully, all participants are required to progress to "level 3." Henderson testified that appellant did not participate in the program as required because he refused to perform his assigned tasks. Rather, appellant voiced that he was not supposed to be in the program and resisted the instructions that he was given. Henderson explained that, after one month in the program, appellant had not performed the tasks that most participants normally accomplished in the first two weeks. And, he did not "do the requirements to progress to level 1."

Sikes testified that the first time that appellant was admitted into the IDT program, he progressed "somewhat," but was resentful and fixated on challenging the reasons that he had been assigned to the program. Appellant insisted that he did not have a substance abuse problem and that he had been "wronged by having to be in the program." And, on February 5, 2018, appellant was discharged from the program.

Jones testified that, on February 5, 2018, appellant was brought to the trial court to address his behavioral issues. The IDT counselors discussed with the trial court the reasons that a discharge was recommended, and the trial court made the decision to discharge appellant from the IDT program. Again, proof of a single

8

violation of the terms and conditions of community supervision is sufficient to support a trial court's decision to revoke. *See Garcia*, 387 S.W.3d at 26. Although the record shows that the trial court later gave appellant a second chance to complete the IDT program, the evidence shows, and it is undisputed, that he did not do so.

Viewed in the light most favorable to the trial court's order, the greater weight of the evidence supports a reasonable belief that appellant violated a condition of his community supervision by not "successfully complet[ing]" the IDT program and being "unsuccessfully discharged." *See Rickels*, 202 S.W.3d at 764; *Bell*, 554 S.W.3d at 746; *see also Stento v. State*, No. 01-17-00164-CR, 2018 WL 6377973, at *3–4 (Tex. App.—Houston [1st Dist.] Dec. 6, 2018, no pet.) (mem. op., not designated for publication) (holding that program-staff testimony about defendant's behavior and violations of rules was sufficient to support trial court's revocation of community supervision and adjudication of guilt); *Bradford v. State*, No. 02-16-00421-CR, 2017 WL 6759030, at *4 (Tex. App.—Fort Worth Dec. 28, 2017, no pet.) (mem. op., not designated for publication).

Further, there is no evidence that appellant was discharged from the IDT program "for a wholly inappropriate reason . . . or mere caprice." *Leonard*, 385 S.W.3d at 577; *Stento*, 2018 WL 6377973, at *3. The purposes of community supervision are "to protect or restore the community, protect or restore the victim, or punish, rehabilitate, or reform the defendant." TEX. CODE CRIM. PROC. art.

9

42A.301(a); *see also Stento*, 2018 WL 6377973, at *3. Coffee testified that the IDT program is designed to prevent participants from "just doing their time in the program" and not learning anything. Thus, one ground for discharge from the program is a failure to progress. He explained that to complete the program successfully, all participants are required to progress to "level 3." IDT staff testified that appellant refused to perform his assigned tasks and did not "do the requirements to progress to level 1." IDT staff discussed with the trial court the reasons that a discharge was recommended, and *the trial court* made the decision to discharge appellant from the IDT program.

Once ordered into the program, appellant's level of participation was within his control. *See, e.g.*, *Donovan v. State*, No. PD-0474-14, 2015 WL 4040599, at *5 (Tex. Crim. App. July 1, 2015). Discharging appellant from the program for refusing to progress is rationally connected to the purposes of rehabilitating and reforming him. *See Leonard*, 385 S.W.3d at 577; *see, e.g.*, *Stento*, 2018 WL 6377973, at *3–4 (holding that discharging defendant from program for "disrespecting staff, not following directives, [and] refusing to sign the in-house behavioral contract . . . rationally relate[d] to the objective of rehabilitating and reforming appellant through community supervision"); *Riddle v. State*, No. 02-14-00180-CR, 2014 WL 5409550, at *6 (Tex. App.—Fort Worth Oct. 23, 2014, pet. ref'd) (mem. op., not designated for publication) (holding that whether defendant successfully

10

completed program was left to discretion of treatment specialists, and evidence did not show that they abused their discretion in discharging defendant from program); *Goodwin v. State*, No. 14-12-00512-CR, 2013 WL 5346429, at \*5 (Tex. App.— Houston [14th Dist.] Aug. 27, 2013, no pet.) (mem. op., not designated for publication) ("[Defendant's] making progress in treatment would be rationally connected to the purposes of rehabilitating and reforming [defendant].").

We hold that the trial court did not abuse its discretion in finding "true" that appellant violated the terms and conditions of his community supervision and adjudicating his guilt. *See Leonard*, 385 S.W.3d at 577; *Rickels*, 202 S.W.3d at 764.

We overrule appellant's first issue.

### Modification of Judgment

In his second issue, appellant argues that the trial court's judgment should be modified to comport with the record, which reflects that he entered a plea of "not true" to the State's allegations in its motion to adjudicate. The State agrees that the judgment should be so modified.

The record reflects that, at the adjudication hearing, appellant entered a plea of "not true" to the State's allegations. However, the trial court's judgment states that appellant entered a plea of "true." An appellate court has the power to correct and reform a trial court judgment to make the record speak the truth when it has the necessary data and information to do so. *Nolan v. State*, 39 S.W.3d 697, 698 (Tex.

11

App.—Houston [1st Dist.] 2001, no pet.) (citing *Asberry v. State*, 813 S.W.2d 526, 529 (Tex. App.—Dallas 1991, pet. ref'd)). Accordingly, we modify the trial court's judgment to reflect that appellant entered a plea of "not true" to the allegations in the State's motion to adjudicate his guilt. *See* TEX. R. APP. P. 43.2(b) ("Court of Appeals may . . . modify the trial court's judgment and affirm it as modified."); *Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993); *Torres v. State*, 391 S.W.3d 179, 185 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd) (modifying judgment to state that defendant pleaded "true" to allegations in enhancement paragraphs).

We sustain appellant's second issue.

## Conclusion

We modify the trial court's judgment to reflect appellant's plea of "not true" to the State's allegation in its motion to adjudicate. As modified, we affirm the trial court's judgment.

Sherry Radack
Chief Justice

Panel consists of Chief Justice Radack and Justices Goodman and Countiss.

Do not publish. TEX. R. APP. P. 47.2(b).