**Opinion issued December 5, 2019**



In The

# Court of Appeals

**For The**

# First District of Texas

———————————

**NO. 01-18-00672-CR**

———————————

**JOSEPH HASKINS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 149th District Court**
**Brazoria County, Texas**
**Trial Court Case No. 80889-CR**

---

**MEMORANDUM OPINION**

Appellant, Joseph Haskins, pleaded guilty to the second-degree felony offense

of burglary of a habitation.[1] The trial court deferred adjudication of appellant's guilt

---

[1] *See* TEX. PENAL CODE ANN. § 30.02(a)(1).

and placed him on community supervision for four years. The State subsequently filed two motions to adjudicate guilt, arguing that appellant had violated multiple conditions of his community supervision. At a hearing, the trial court found that appellant had violated the community supervision conditions. The trial court revoked appellant's community supervision, found appellant guilty of the charged offense of burglary, and assessed his punishment at twelve years' confinement. In his sole issue, appellant contends that the trial court abused its discretion by revoking his community supervision. The State requests that we modify the judgment of the trial court to reflect that the trial court found all of the allegations in the amended motion to adjudicate guilt to be true.

We modify the judgment of the trial court and affirm as modified.

## Background

In February 2017, a Brazoria County grand jury indicted appellant for the offense of burglary of a habitation, alleging that appellant had entered a habitation without the effective consent of the owner and with the intent to commit theft. In April 2017, appellant pleaded guilty to this offense. The trial court entered an order of deferred adjudication and placed appellant on community supervision for four years. The trial court imposed multiple conditions on appellant during the period of community supervision, including:

- Commit no offense against the laws of Texas or any other state;

2

- Avoid "injurious or vicious conduct" and "totally abstain" from the consumption of alcohol or the illegal use of controlled substances;

- Pay a monthly supervision fee, as well as a Crime Stoppers fee, a $500 fine, and $318 in court costs;

- Submit to random drug and alcohol testing;

- Complete 120 hours of community service;

- Appear for a review hearing before the trial court on October 13, 2017.

Appellant acknowledged receiving a copy of these conditions.

On October 23, 2017, the State filed a motion to adjudicate guilt. In this motion, the State alleged that appellant violated the conditions of his community supervision relating to (1) avoiding injurious or vicious conduct and abstaining from the use of alcohol and controlled substances; (2) paying the required fees and costs; (3) completing community service; and (4) appearing at the October 13 review hearing. Specifically, the State alleged that appellant used hydrocodone on September 2, 2017, marijuana and alcohol on September 9, 2017, and methamphetamine and amphetamine on September 27, 2017. The State requested that the trial court adjudicate appellant's guilt of the underlying burglary offense.

The State filed an amended motion to adjudicate guilt on April 3, 2018, raising twelve allegations that appellant had violated the conditions of his community supervision. In addition to the allegations that appellant had used drugs and alcohol in September 2017 and failed to appear at the October 2017 hearing, the State added allegations that appellant committed an offense against the laws of Texas on March

3

12, 2018, when he recklessly engaged in conducted that placed Nathan Venters in imminent danger of serious bodily injury by "dispersing gasoline in Nathan Venters' residence and attempting to ignite the gasoline." The State also alleged that appellant had failed to pay the required supervision fee for September 2017 through February 2018, the required Crime Stoppers fee, the $500 fine, and court costs. The State further alleged that appellant failed to complete the required community service for September 2017 through February 2018.

The trial court held a revocation hearing on July 9, 2018. At the beginning of the hearing, the trial court read each of the twelve allegations presented in the State's amended motion to adjudicate guilt and asked for appellant's plea to each allegation. Appellant pleaded not true to allegation one, concerning placing Nathan Venters in danger of serious bodily injury by dispersing gasoline in his residence and attempting to ignite it; allegation three, that he used alcohol on September 9, 2017; and allegation five, that he used amphetamines on September 27, 2017. Appellant pleaded true to the other nine allegations raised in the State's motion to adjudicate. The trial court asked appellant whether his pleas of true were made freely and voluntarily, whether anyone forced or threatened him to make those pleas, and whether he was pleading true because the allegations were true. Appellant responded that his pleas of true were made freely and voluntarily, that no one had threatened him, and that the allegations to which he pleaded true were true.

4

Houston Police Department Office T. Le testified that she was on patrol on March 12, 2018, when she received a dispatch relating to someone pouring gasoline inside of an apartment in southeast Houston. When she arrived, Le learned that the apartment was rented to Bettie Venters, who lived there with her sons, Nathan Venters and appellant. Le could smell a strong smell of gasoline when she entered the living room of the apartment. Appellant was not at the apartment at the time that Le arrived, but another officer arrested him later that evening in the backyard, and he was subsequently charged by a Harris County grand jury with deadly conduct.[2] Appellant had marijuana in his possession at the time of his arrest. Nathan Venters told Le that appellant had been smoking a cigarette around where he had poured the gasoline. Appellant threw his cigarette on the ground, and Nathan extinguished it.

Brazoria County Probation Officer A. Woods was assigned to monitor appellant during his community supervision. She met with appellant once on September 27, 2017.[3] Woods requested that appellant complete a drug and alcohol urinalysis test on this date, which he did. Appellant tested positive for marijuana and

---

[2]      Officer Le testified that the deadly conduct case against appellant in Harris County was still pending at the time of the revocation hearing in Brazoria County.

[3]      Woods testified that although appellant was placed on community supervision in April 2017, she did not meet appellant until September 2017 because appellant had a pending charge in Harris County and was sentenced to state jail time. Appellant was released from confinement on this charge on September 8, 2017, and Woods met with him shortly thereafter.

admitted to Woods that he had used marijuana on September 9, 2017. Appellant did not test positive for alcohol, but he admitted to Woods that he had consumed alcohol on September 9. Appellant's drug test results also revealed that appellant had consumed methamphetamine and amphetamines. When speaking to Woods, appellant denied taking methamphetamine and amphetamines, but he admitted taking some of his father's hydrocodone pills.[4] Appellant did not have an explanation for why he had tested positive for methamphetamine. The trial court admitted copies of appellant's drug test results.

Woods testified that appellant never paid any of his required monthly supervision fees, nor did he pay the required Crime Stoppers fee, the $500 fine imposed in the order of deferred adjudication, or his court costs. Woods stated that the community supervision conditions required appellant to complete 120 hours of community service, but although Woods explained this requirement and appellant indicated his understanding, he did not complete any community service hours. Woods also testified that she twice told appellant—including during a phone conversation on October 11—that the community supervision conditions required him to appear at a review hearing before the trial court on October 13, 2017, but appellant did not attend. Appellant called Woods on October 13 and stated that he

---

[4]    Appellant did not test positive for hydrocodone or opiates. Woods asked appellant if it was possible that the pills he took were not actually hydrocodone, and appellant "explained that those were his father's pills."

6

had not been able to attend the hearing because he had been in the emergency room for chest pains, but appellant never provided any medical records or documentation to Woods. Woods sought a capias for appellant's arrest due to his failure to attend the October 2017 hearing. Woods had no further contact with appellant after October 2017, and appellant was placed on "absconder" status in December 2017.

Appellant also testified at the revocation hearing. At the time he was placed on community supervision he was living with his mother in Houston. Appellant testified that he was released from confinement on a separate charge in September 2017, and he would smoke marijuana every day as a way to deal with the pressure of being out of confinement and on community supervision. With respect to the positive drug test results for methamphetamine and amphetamines, appellant stated, "I wasn't aware that it was methamphetamine. It was a tab that I took." He stated that he believed he was taking an antidepressant. Appellant testified, "[W]hen I failed the [urinalysis] sample, that's when I figured everything was just downhill from there; and I was just waiting for them to come and get me."

With respect to the incident in March 2018 at his apartment with the gasoline, appellant stated that he had been hearing voices. He also stated that he had taken "a tab" the day before, which he thought was an antidepressant, and he felt frustrated and extremely confused regarding what was going on with himself and the people around him. He obtained the gasoline that he used from a local corner store.

7

Appellant denied that he had any drug addictions, but he requested that if the trial court believed he needed to participate in a drug treatment program, that he be allowed to complete such a program while not being confined.

Appellant admitted that he had not completed any of his required community service hours, that he had not paid any of the required fines or costs, and that he had not attended the October 2017 review hearing. He admitted that he was not in the hospital on the date of the review hearing and that he had lied to Woods when he told her that that was where he had been. He stated that, because he had failed the urinalysis test, he believed he would have been arrested had he shown up to the hearing.

At the close of the hearing, the trial court found all twelve allegations raised in the State's amended motion to adjudicate guilt to be true. Approximately two weeks later, the trial court held a sentencing hearing at which it revoked appellant's community supervision, found him guilty of the underlying offense of burglary of a habitation, and assessed his punishment at twelve years' confinement.[5] This appeal followed.

---

[5]     The trial court's judgment adjudicating guilt stated, "While on community supervision, Defendant violated the terms and conditions of community supervision as set out in the State's 1st Amended Motion to Adjudicate Guilt as follows: **2, 4, 6, 7, 8, 9, 10, 11, 12**." The judgment did not state that appellant violated allegations one, three, and five raised in the State's amended motion, even though the trial court orally found these allegations to be true.

**Revocation of Community Supervision**

In his sole issue, appellant contends that the trial court abused its discretion by finding that he had violated the conditions of his community supervision and by revoking his community supervision.

## A. *Standard of Review and Governing Law*

If, in the opinion of the trial court, the best interest of society and the defendant will be served, the court may, after receiving a plea of guilty, hearing the evidence, and finding that it substantiates the defendant's guilt, defer further proceedings without entering an adjudication of guilt and place the defendant on deferred adjudication community supervision. TEX. CODE CRIM. PROC. ANN. art. 42A.101(a). The trial court shall inform the defendant of the possible consequences of violating a condition of deferred adjudication community supervision. *Id.* art. 42A.101(b); *see id.* art. 42A.751(b) ("At any time during the period of community supervision, the judge may issue a warrant for a violation of any condition of community supervision and cause the defendant to be arrested."). If a defendant violates a condition of deferred adjudication community supervision, the defendant "is entitled to a hearing limited to a determination by the court of whether the court will proceed with an adjudication of guilt on the original charge." *Id.* art. 42A.108(b). After the trial court adjudicates the defendant's guilt, all proceedings, including a defendant's appeal, "continue as if the adjudication of guilt had not been deferred." *Id.* art. 42A.110(a).

For a trial court to revoke a defendant's community supervision, the State must prove the violation of a condition of community supervision by a preponderance of the evidence. *Hacker v. State*, 389 S.W.3d 860, 864–65 (Tex. Crim. App. 2013); *Rickels v. State*, 202 S.W.3d 759, 763 (Tex. Crim. App. 2006); *Bell v. State*, 554 S.W.3d 742, 746 (Tex. App.—Houston [1st Dist.] 2018, pet. ref'd). In this context, "a preponderance of the evidence" means "that greater weight of the credible evidence which would create a reasonable belief that the defendant has violated a condition of his probation." *Hacker*, 389 S.W.3d at 865 (quoting *Rickels*, 202 S.W.3d at 763–64); *Bell*, 554 S.W.3d at 746.

Our review of a trial court's order revoking community supervision and adjudicating a defendant's guilt is limited to determining whether the trial court abused its discretion in determining that the defendant violated the conditions of his community supervision. *Bell*, 554 S.W.3d at 746 (citing *Rickels*, 202 S.W.3d at 763); *Duncan v. State*, 321 S.W.3d 53, 56–57 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd); *see Hacker*, 389 S.W.3d at 865 ("For probation-revocation cases, we have described the appellate standard of review as whether the trial court abused its discretion."). To support the trial court's order revoking community supervision and adjudicating guilt, the State need only establish one sufficient ground for revocation. *Duncan*, 321 S.W.3d at 57. "A plea of true, standing alone, is sufficient to support the revocation of community supervision and adjudicate guilt." *Tapia v. State*, 462

10

S.W.3d 29, 31 n.2 (Tex. Crim. App. 2015). We view the evidence in the light most favorable to the trial court's order. *Bell*, 554 S.W.3d at 746; *Duncan*, 321 S.W.3d at 57. As the factfinder at a revocation proceeding, the trial court determines the credibility of the witnesses and the weight to be given to their testimony. *Bell*, 554 S.W.3d at 746; *Duncan*, 321 S.W.3d at 57.

## B.    *Analysis*

In this case, appellant pleaded guilty to the underlying criminal offense—a charge of burglary of a habitation. The trial court deferred adjudication of appellant's guilt and placed him on community supervision for four years. The trial court imposed numerous conditions on appellant during this period of community supervision, including requirements that he commit no violations against the laws of Texas, that he avoid using alcohol and controlled substances, that he pay certain required fines and costs, that he complete 120 hours of community service, and that he attend a review hearing on October 13, 2017. The State filed original and amended motions to revoke appellant's community supervision and to adjudicate his guilt of the underlying burglary offense, alleging that he had committed twelve violations of the conditions of community supervision.

At the revocation hearing, appellant pleaded not true to three of the allegations raised by the State in its motion to adjudicate: (1) that he had committed the offense of deadly conduct by pouring gasoline in his mother's apartment and attempting to

11

ignite the gasoline; (2) that he had used alcohol on September 9, 2017; and (3) that he had used amphetamines on September 27, 2017. Appellant pleaded true to the other nine allegations raised in the State's motions. Appellant's pleas of true to nine of the allegations in the State's motion, standing alone, are sufficient to support the trial court's order revoking his community supervision and adjudicating his guilt of the underlying burglary offense.[6] *See Tapia*, 462 S.W.3d at 31 n.2; *see also Duncan*, 321 S.W.3d at 57 (stating that, to support trial court's revocation and adjudication order, State need only establish one sufficient ground for revocation).

Appellant argues that the trial court abused its discretion and he was denied due process because "the mere placing of a defendant on a deferred adjudication that all parties know is a failure from day one violates due process." As support for this

---

[6] We note that, in addition to appellant's pleas of true to nine of the allegations raised in the State's amended motion, appellant testified at the revocation hearing and admitted that he had used marijuana and controlled substances, that he had poured the gasoline inside his mother's house, that he had completed none of his required community service hours, that he had not paid any of his required fees or costs, and that he had failed to attend the October 2017 review hearing. Appellant's testimony is also supported by testimony from Officer Le concerning the March 2018 incident at his mother's apartment and from Officer Woods concerning appellant's positive drug test results, failure to complete his community service hours, failure to pay his required fees and costs, and failure to attend the review hearing. We conclude that the State presented sufficient evidence that appellant violated the conditions of his community supervision. *See Hacker v. State*, 389 S.W.3d 860, 864–65 (Tex. Crim. App. 2013) (holding that State must prove that defendant violated condition of community supervision by preponderance of evidence, meaning "that greater weight of the credible evidence which would create a reasonable belief that the defendant has violated a condition of his probation"); *Bell v. State*, 554 S.W.3d 742, 746 (Tex. App.—Houston [1st Dist.] 2018, pet. ref'd).

argument, appellant points out that, at the time he was placed on deferred adjudication for the underlying burglary offense in Brazoria County in April 2017, he was serving a sentence for an unknown offense in Harris County. He was confined for approximately five months on that offense before being released from confinement in September 2017. Appellant argues that he was "five or more months behind" on his community supervision for the Brazoria County burglary offense at the time he was released from confinement for the Harris County offense, and the trial court abused its discretion by revoking his deferred adjudication because, at the time he was placed on deferred adjudication for the Brazoria County offense, he was "immediately in violation of same and subject to revocation" due to his incarceration for the Harris County offense.

The State, however, did not seek to adjudicate appellant's guilt on the Brazoria County burglary offense due to any conduct or failures to comply that occurred while appellant was incarcerated in Harris County from April 2017 through early September 2017. Instead, all of the grounds raised in the State's motion addressed conduct or omissions that occurred after appellant was released from confinement. The State alleged that appellant consumed alcohol and controlled substances after he was released from confinement in September 2017. It specifically alleged that appellant failed to complete his required community service and failed to pay his required fees and costs beginning in September 2017 through February 2018. It

alleged that he failed to attend a review hearing in October 2017, after he had been released from confinement. And it alleged that he committed a new offense against the laws of Texas in March 2018, six months after he had been released from confinement. Appellant's argument that the trial court's revocation and adjudication order violated his due process rights because he was placed on deferred adjudication knowing that he would immediately be in violation of the conditions of community supervision is therefore unavailing.

We hold that the trial court did not abuse its discretion in finding that appellant had violated the conditions of his community supervision, revoking his community supervision, and adjudicating his guilt of the underlying burglary offense. *See Hacker*, 389 S.W.3d at 865; *Bell*, 554 S.W.3d at 746.

We overrule appellant's sole issue.

## C.    *Modification of Trial Court's Judgment*

The State requests that we modify a portion of the trial court's judgment adjudicating appellant's guilt for the burglary offense because the judgment erroneously states that appellant violated the conditions of community supervision as set out in allegations "2, 4, 6, 7, 8, 9, 10, 11, [and] 12" of the State's amended motion to adjudicate, but the trial court stated both at the close of the revocation hearing and at the sentencing hearing approximately two weeks later that it found

14

that all twelve allegations raised in the State's amended motion—including allegations one, three, and five—were true.

Appellate courts have the authority to reform a judgment and affirm the judgment as modified in cases where there is non-reversible error. *Walker v. State*, 557 S.W.3d 678, 690 (Tex. App.—Texarkana 2018, pet. ref'd); *see* TEX. R. APP. P. 43.2 (providing that appellate court may "modify the trial court's judgment and affirm it as modified"). We may modify a judgment when the evidence necessary to correct that judgment appears in the record. *See Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993) (declining to limit courts of appeals' authority to reform judgments to situations involving clerical mistakes); *Edwards v. State*, 497 S.W.3d 147, 164 (Tex. App.—Houston [1st Dist.] 2016, pet. ref'd) (stating that appellate courts have "the power to correct and reform the judgment of the court below 'to make the record speak the truth when it has the necessary data and information to do so'") (quoting *Nolan v. State*, 39 S.W.3d 697, 698 (Tex. App.—Houston [1st Dist.] 2001, no pet.)).

At the close of the revocation hearing, the trial court stated on the record that it found all twelve allegations raised in the State's amended motion to adjudicate guilt to be true. At a sentencing hearing approximately two weeks later, the trial court stated that it found allegations one through four and allegations six through twelve to be true, and allegation five to be not true. The prosecutor sought

15

clarification, pointing out that at the revocation hearing, the trial court had found all twelve allegations to be true. The trial court reviewed its notes and agreed with the prosecutor, stating, "I didn't read my notes correctly. I did find that all allegations were true. . . . So I will find all allegations to be true." The written judgment adjudicating appellant's guilt, however, included a finding stating, "While on community supervision, Defendant violated the terms and conditions of community supervision as set out in the State's 1st Amended Motion to Adjudicate Guilt as follows: **2, 4, 6, 7, 8, 9, 10, 11, 12**."

The written judgment omits the trial court's oral findings on the record that the first, third, and fifth allegations raised in the State's amended motion to adjudicate guilt were also true. The State argues that we should reform the judgment of the trial court to include the court's oral findings that allegations one, three, and five were true. The record reflects that, in addition to the allegations specified in the judgment, the trial court also found the first, third, and fifth allegations to be true, and evidence presented at the revocation hearing supports these findings. We therefore grant the State's request and modify the judgment of the trial court to reflect that the trial court found all allegations raised in the State's amended motion to adjudicate to be true.

16

## Conclusion

We modify the judgment of the trial court to state: "While on community supervision, Defendant violated the terms and conditions of community supervision as set out in the State's 1st Amended Motion to Adjudicate Guilt as follows: **1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12**." We affirm the judgment as modified.

 

Evelyn V. Keyes
Justice

Panel consists of Chief Justice Radack and Justices Keyes and Hightower.

Do not publish. TEX. R. APP. P. 47.2(b).